**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-4185**

---

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DANIEL N. KEMP, SR.,

Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:19-cr-000149-BO-2)

---

Argued:  September 19, 2023                    Decided:  December 13, 2023

---

Before HARRIS and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

---

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Harris wrote the majority opinion, in which Judge Quattlebaum and Senior Judge Keenan joined.  Judge Quattlebaum wrote a concurring opinion.

———————————

**ARGUED:** Daniel Baker McIntyre, III, Charlotte, North Carolina, for Appellant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————————

2

PAMELA HARRIS, Circuit Judge:

Defendant Daniel N. Kemp, Sr., was charged with nine counts of sexually abusing his adopted children.  Pursuant to an agreement with the government, he pleaded guilty to one count of aggravated sexual abuse, and the remaining charges were dismissed.  The district court sentenced Kemp to life imprisonment – a term within the Sentencing Guidelines range adopted by the court – and to a lifetime term of supervised release.

Kemp appealed, and his appointed counsel filed an *Anders* brief raising two issues but concluding that the appeal was without merit.  *See Anders v. California*, 386 U.S. 738 (1967).  After this court ordered supplemental briefing to address additional issues regarding Kemp's conviction and sentence, the government asked that we dismiss Kemp's appeal as untimely.  We conclude, however, that the government has forfeited the timeliness issue and we therefore reach the merits of Kemp's appeal.  For the reasons given below, we affirm Kemp's conviction.  But because Kemp's written judgment includes discretionary conditions of supervised release that were not orally pronounced at sentencing, we follow our usual practice, *see United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), vacating Kemp's sentence and remanding for resentencing.

## I.

### A.

As the district court emphasized at sentencing, this case arises from very disturbing facts.  While Daniel Kemp was serving in the United States Army in New York, he and his wife adopted six children.  Years later, with Kemp now stationed in North Carolina, it was

3

revealed that Kemp had been forcing his adopted children to engage in sexual acts at their home. The investigation began when one of Kemp's children told her teacher and other school officials of the sexual abuse; after that, several of Kemp's children reported their own abuse to government investigators, sometimes in graphic terms. Investigators also seized incriminating materials from Kemp's electronic devices and uncovered DNA evidence corroborating the children's reports of sexual assaults and abuse.

Kemp was charged with nine criminal counts related to the sexual abuse of his children. He entered into a plea agreement with the government under which he pleaded guilty to one count of aggravated sexual abuse in violation of 18 U.S.C. §§ 7, 2241(a), stemming from occasions when Kemp forced his youngest child to perform sex acts in the basement of their house and the child's bedroom. In exchange, the government dismissed the other eight counts against Kemp.

Kemp's plea agreement set out the statutory sentencing range for his § 2241(a) conviction, specifying that the offense carried a maximum prison term of life and no minimum term. The agreement also put Kemp on notice of a maximum supervised release term of life, a maximum fine of $250,000, and an obligation to pay restitution to all his victims, including those related to the dismissed charges. Finally, the agreement included a broad appeal waiver under which Kemp waived his right to appeal his conviction and sentence on any ground, reserving only the right to challenge a sentence that exceeded the advisory Sentencing Guidelines range as established at sentencing or to seek relief for ineffective assistance of counsel or prosecutorial misconduct.

4

The district court conducted a plea colloquy with Kemp, *see* Fed. R. Crim. P. 11, advising him of his rights and the charges against him and confirming that Kemp was pleading guilty to one count of aggravated sexual abuse pursuant to a plea agreement with the government. After the prosecutor described the factual basis for the plea – the forcible sexual abuse of Kemp's youngest child – the district court found that Kemp's plea was voluntary and had the necessary factual basis, and it entered a judgment of guilty on the § 2241(a) charge.

At sentencing, the district court adopted an advisory Sentencing Guidelines range of 360 months to life, as calculated by Kemp's Presentence Report. After hearing Kemp's allocution and six victim-impact statements and considering the sentencing factors set out in 18 U.S.C. § 3553(a), the court denied a requested downward departure and sentenced Kemp to life imprisonment. The court also imposed a lifetime term of supervised release. Relevant here, the court did not orally pronounce the multiple discretionary conditions of supervised release that were included in Kemp's written judgment. After a continuation to determine appropriate restitution, the judgment was amended to include $6,008,797 in restitution.

**B.**

Under Rule 4(b) of the Federal Rules of Appellate Procedure, a defendant in a criminal case must file a notice of appeal within 14 days of the entry of judgment. Fed. R.

App. P. 4(b)(1)(A)(i).  Kemp's amended judgment was entered on January 8, 2021.  Kemp filed his notice of appeal on April 16, 2021, well outside that statutory period.[1]

This court appointed counsel for Kemp and issued a briefing order.  That order set deadlines for Kemp's opening brief, the government's response brief, and Kemp's reply brief.  And it expressly warned the government that failure to file a "motion to dismiss within the time allowed for filing a response brief[] may result in waiver of defenses."  ECF No. 10 at 2.  In connection with that notice, it cited our Local Rule 27(f), which provides that motions to dismiss on procedural grounds "should be filed within the time allowed for the filing of the response brief."  4th Cir. R. 27(f)(2).  The order then described additional procedures that apply to the filing of a defendant's brief under *Anders v. California*, 386 U.S. 738 (1967), none of which bear on the filing of motions to dismiss.

Kemp's appointed counsel timely filed an *Anders* brief stating that there were no meritorious grounds for appeal but identifying as issues the district court's calculation of Kemp's Sentencing Guidelines range and whether Kemp's counsel provided effective assistance before the district court.  The government elected not to file a response brief.  But on the day a response would have been due, consistent with the briefing order and Local Rule 27(f)(2), the government filed a motion to dismiss.  In that motion, the

---

[1] On March 22, 2021, Kemp filed with the district court a self-styled "Appeal Extension Request," seeking an extension of time to file any motions.  The district court denied the motion without prejudice.  Because Kemp's request was submitted more than two months after entry of judgment, outside the maximum 30-day extension permitted under the Federal Rules, *see* Fed. R. App. P. 4(b)(4), it does not affect the timeliness of Kemp's appeal.

government sought dismissal on one and only one procedural ground, arguing that Kemp's appeal was barred in part by his appeal waiver.[2]

After conducting an independent *Anders* review, this court ordered supplemental briefing on two issues outside the scope of Kemp's appeal waiver: whether errors and omissions during Kemp's plea colloquy cumulatively undermined the validity of his guilty plea; and whether the court's failure to orally pronounce the discretionary conditions of Kemp's supervised release constituted reversible error, *see United States v. Singletary*, 984 F.3d 341, 344–45 (4th Cir. 2021) (holding that such claims are not barred by a general waiver of appellate rights). Kemp timely filed a supplemental brief. The government then filed its response brief, addressing the identified claims on the merits and also asking, for the first time, that we dismiss Kemp's appeal as untimely.

## II.

### A.

We begin with the government's request that we dismiss Kemp's appeal on timeliness grounds. As explained below, we conclude that the government forfeited its right to invoke Rule 4(b)'s deadline when, in response to Kemp's opening brief, it filed a

---

[2] The government did not argue that Kemp's appeal waiver foreclosed a Sixth Amendment ineffective assistance of counsel claim. But an appeal regarding the calculation of the Sentencing Guidelines range, the government argued, was precluded by the waiver.

motion to dismiss for one procedural reason – Kemp's appeal waiver – but not another – timeliness – that was equally apparent from the record.

Much of the background here is common ground. It is undisputed that Kemp filed his notice of appeal outside the 14 days allowed by Rule 4(b) of the Federal Rules of Appellate Procedure. The parties also agree that Rule 4(b) is not jurisdictional but is instead a "mandatory claim-processing rule." *United States v. Hyman*, 884 F.3d 496, 498 (4th Cir. 2018). That makes Rule 4(b) "inflexible," in that we must "strictly apply" the 14-day period if it is "timely raised." *Id.* at 498–99. But it also means that Rule 4(b) is subject to waiver and forfeiture, and we will deem an invocation of Rule 4(b) "forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 498 (internal quotation marks omitted); *see United States v. Oliver*, 878 F.3d 120, 123–24 (4th Cir. 2017) (explaining that the government's "fail[ure] to object promptly to an appeal's untimeliness" generally constitutes forfeiture).

What the parties dispute is whether the government "wait[ed] too long" here by failing to invoke Rule 4(b) within the time for filing a response to Kemp's opening brief. After our decisions in *Hyman* and *Oliver*, this court revised Local Rule 27(f) to provide that motions to dismiss on procedural grounds "should be filed within the time allowed for the filing of the response brief." 4th Cir. R. 27(f)(2). And as noted above, our initial briefing order set a deadline for a response brief and tied that deadline to the requirements of our local rule, notifying the government that failure to file a "motion to dismiss within the time allowed for filing a response brief[] may result in waiver of defenses." ECF No. 10 at 2. From that, Kemp argues, it was clear that any motion to dismiss under Rule 4(b)

8

should have been filed within the time for responding to his *Anders* brief, and the government's failure to meet that deadline forfeited its right to invoke Rule 4(b) now. *See United States v. Turner*, No. 19-4529, 2020 U.S. App. LEXIS 19407, at \*1–2 (4th Cir. June 22, 2020) (unpublished order adopting this position and denying government's motion to dismiss under Rule 4(b) for failure to timely move in response to defendant's *Anders* brief).

The government disagrees. In its view, expanded upon at oral argument, the *Anders* context for this case is critical. When an *Anders* brief is filed, the government may but need not file a response brief; if it chooses, it can "do nothing, allowing this court to perform the required *Anders* review" itself. *See United States v. Poindexter*, 492 F.3d 263, 271 (4th Cir. 2007). That is what happened here, the government says, and as a result, the deadline for a response brief in our initial briefing order – a response brief never filed – should not be treated as controlling under Local Rule 27(f)(2). Instead, what matters is that the government sought dismissal under Rule 4(b) in the only response brief it did file, and that it did so within the "time allowed for the filing of [that] response brief," *see* 4th Cir. R. 27(f)(2), in our supplemental briefing order.

We need not resolve here how Local Rule 27(f)(2) generally will apply in the *Anders* context. Because while it is true that the government *may* sit out an *Anders* brief, "do[ing] nothing" in response, *see Poindexter*, 492 F.3d at 271, that is not what happened here. Instead, the government *did* respond to the *Anders* brief, and it did so with the motion to dismiss on procedural grounds contemplated by Local Rule 27(f)(2), filed within the time for the response brief set out in the original scheduling order. The only thing it did not do was include in that motion, which rested exclusively on the defendant's appeal waiver, the

9

different procedural ground – timeliness – on which it now asks us to dismiss this appeal. The government has provided no justification for this omission, and we can think of none; at the time the government filed its motion to dismiss, the timeliness issue would have been just as apparent from the record as the appeal-waiver problem. Under these circumstances, we conclude, the government has forfeited its right to invoke Rule 4(b) and to press its timeliness objection now. *See Oliver*, 878 F.3d at 123 (explaining that the government forfeits a Rule 4(b) claim when it fails to object on that ground "in either its merits brief or an earlier motion to dismiss").

We held in *Oliver* that when the government does not promptly object to an untimely appeal, we must "assume that the [g]overnment wishes the court to decide the case on the merits." *See id.* at 128. Our court made precisely that assumption here when the government filed its motion to dismiss on one procedural ground without raising the timeliness objection that was also apparent on the record. As a result, this court performed its own required independent review under *Anders*, devoting substantial time to identifying and ordering supplemental briefing on potential issues that fell outside the scope of Kemp's appeal waiver. Permitting the government to invoke Rule 4(b) now would do a disservice to the efforts of this court and defense counsel, who justifiably assumed that the government's motion to dismiss included all then-applicable procedural grounds on which the government wished to rely. Because we find that the government forfeited its right to invoke Rule 4(b) by failing to raise it in its earlier motion to dismiss, we move on to the merits of Kemp's appeal.

10

**B.**

**1.**

We begin with Kemp's conviction. Kemp first argues that the district court's plea colloquy failed to comply with Rule 11 of the Federal Rules of Criminal Procedure in multiple respects, and that the cumulative effect of those errors was sufficient to undermine the validity of his guilty plea. Because Kemp "did not attempt to withdraw his guilty plea in the district court," we review this claim for plain error only, *see United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc), and find no reversible error.

Rule 11 outlines the requirements for a district court plea colloquy, designed to ensure that a defendant "understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002); *see* Fed. R. Crim. P. 11(b)(1). We agree with Kemp that this colloquy fell short in multiple respects. The court skipped over certain advisements of rights – failing to inform Kemp, for instance, of his right to be represented by counsel. *See* Fed. R. Crim. P. 11(b)(1)(D). The court did not confirm, as it should have, that Kemp's plea did not result from force, threats, or promises. *See* Fed. R. Crim. P. 11(b)(2). But Kemp was represented by counsel throughout, and the district court did determine that his plea was voluntary, so in context, these omissions may have had no measurable effect.

There are other errors, though, of more potential significance. Perhaps most notably, the district court failed to discuss its authority to order restitution, as required by Rule 11(b)(1)(K) – and then imposed restitution totaling roughly $6 million. And the discussion of Kemp's appeal waiver, *see* Fed. R. Crim. P. 11(b)(1)(N), was less than

11

perfectly clear, with the court first suggesting that Kemp had not waived any appellate rights and then informing Kemp that he had reserved his right to appeal "from the sentencing excessive guideline." J.A. 33–34.

As noted above, however, our review here is limited to plain error. Under that standard, Kemp can prevail and withdraw his plea only if he demonstrates an obvious or "plain" error that "affected his substantial rights." *Lockhart*, 947 F.3d at 191. In evaluating whether Rule 11 omissions affected a defendant's substantial rights, we consider whether the defendant had independent notice of the omitted information, as from a plea agreement. *United States v. General*, 278 F.3d 389, 394–95 (4th Cir. 2002) (noting that the written plea agreement provided the Rule 11 information omitted in the plea colloquy). And here, Kemp's signed plea agreement did make him aware of much of the information missing from his plea colloquy, including his obligation to pay restitution to all his victims and the actual terms of his appeal waiver.

Moreover, to establish an effect on his substantial rights in this context, Kemp bears the burden of establishing "a reasonable probability that, but for the error, he would not have entered the plea." *Lockhart*, 947 F.3d at 192 (internal quotation marks omitted). Kemp has not even attempted to make that showing, offering no account of how these omissions or errors, even in the aggregate, led him to accept a plea agreement he otherwise would have declined. Instead, the record evidence suggests the contrary, with Kemp's counsel explaining at sentencing that Kemp chose to plead guilty in part to spare his children the further pain of a trial. *See United States v. Kim*, 71 F.4th 155, 167 (4th Cir. 2023) (considering as part of its substantial rights analysis the defendant's "deep shame"

12

and noting that proceeding to trial would invite more public attention). Viewing the record in its entirety, we conclude that Kemp has failed to meet his burden of demonstrating that the errors and omissions in his colloquy, assuming they qualify as "plain," affected his substantial rights, as required for relief under plain error review.

Kemp raises one other challenge to his conviction, contending that his district court counsel provided ineffective assistance in violation of the Sixth Amendment, in part by misleading him about his potential sentence. An ineffective assistance claim will be addressed on direct appeal only when "an attorney's ineffectiveness conclusively appears on the face of the record." *United States v. Faulls*, 821 F.3d 502, 507–08 (4th Cir. 2016). Because Kemp's claim relies on alleged out-of-court statements by his district court counsel, this is clearly not such a case. Kemp's ineffective assistance claim "should be raised, if at all, in a 28 U.S.C. § 2255 motion." *Id.* at 508.

**2.**

We turn finally to Kemp's sentence. It is undisputed that the district court failed to orally pronounce at sentencing multiple discretionary conditions of supervised release that it subsequently imposed in Kemp's written judgment. As the government concedes, that constitutes error under *United States v. Rogers*, 961 F.3d 291, 300 (4th Cir. 2020), violating the defendant's right to be present at sentencing.

The only dispute in this case is over remedy. We have identified a "clear rule" for remedying *Rogers* errors. *See Singletary*, 984 F.3d at 344. When a district court fails to orally pronounce discretionary conditions of supervised release, we do not simply strike the unpronounced conditions from the judgment. *See id.* at 346 (rejecting defendant's

13

request that unpronounced conditions be stricken from his judgment).  Instead, we vacate the entire sentence and remand for the district court to resentence the defendant.  *Id.*  A full resentencing is generally appropriate, we have explained, because "custodial and supervised release terms [are] components of one unified sentence."  *Id.* at 346 n.4 (quoting *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018)); *see United States v. Singletary*, 75 F.4th 416, 427 n.7 (4th Cir. 2023) ("*Singletary II*") (recognizing that defendant may elect a more limited remand).

Nevertheless, the government asks for precisely the remedy we ruled out in *Singletary*:  in lieu of vacating Kemp's sentence and remanding for resentencing, it urges we should vacate only the unpronounced conditions in Kemp's judgment.  According to the government, a remand for resentencing would be no more than an empty formality, because the district court would undoubtedly resentence Kemp to life imprisonment.  For support, the government points to our unpublished decision in *United States v. Calderon*, No. 19-4907, 2022 WL 898012, at *1 (Mar. 28, 2022) (per curiam), in which we indeed remedied a *Rogers* error – in the sentencing of a defendant subject to a mandatory life term of imprisonment – by vacating the unpronounced conditions without a remand.

We decline to depart here from our ordinary rule that the remedy for *Rogers* error "is not . . . simply to strike the [unpronounced] conditions from the written judgment."  *Singletary*, 984 F.3d at 346.  The government's argument – that a full remand for resentencing is pointless in Kemp's case because the district court would likely reimpose the same sentence – could be pressed in virtually any case; an exception that broad would swallow the *Singletary* rule altogether.  In *Calderon*, the defendant's life sentence was

14

*mandatory*, so it at least was certain that his term of imprisonment would not change on remand. But here, Kemp was sentenced to a discretionary life sentence, at the top of his Sentencing Guidelines range, so a full resentencing could affect his term of incarceration.[3] We recently reiterated that defendants who succeed on *Rogers* claims "are entitled to a full vacatur of their sentences and remand for resentencing" if they so request, *Singletary II*, 75 F.4th at 427 n.7, and that is the rule we apply today.[4]

## III.

For the reasons stated, we affirm Kemp's judgment of conviction. We vacate Kemp's sentence and remand for resentencing consistent with this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[3] Given this important distinction, we need not consider whether *Calderon*, an unpublished decision without precedential effect, is fully consistent with our reasoning in *Singletary*. Even assuming that *Calderon*'s approach is appropriate in cases involving mandatory life sentences, it would not apply to the discretionary sentence at issue here.

[4] Because we vacate Kemp's sentence and remand for resentencing due to *Rogers* error, "we need not and should not proceed further to reach [his] additional arguments about his prior sentencing." *Singletary*, 984 F.3d at 344. Accordingly, we deny as moot the government's motion to dismiss, pursuant to Kemp's appeal waiver, Kemp's challenge to the calculation of his Sentencing Guidelines range.

QUATTLEBAUM, Circuit Judge, concurring:

I concur in the majority's opinion. It properly applies our precedent to this appeal. But I write separately to address my concerns about what might be called our *Rogers-Singletary* jurisprudence. To me, the internal reasoning of *Rogers* and *Singletary* is inconsistent and conflicts with our precedent concerning errors in a written judgment. In addition, while our stated remedy for *Rogers-Singletary* errors is a full resentencing, we do not consistently employ it. Last, I am also concerned that requiring a full resentencing is unnecessary to adequately remedy *Rogers-Singletary* errors and out of step with how other courts of appeals address these issues. To explain my concerns, I will start by explaining the development and current approach we take toward *Rogers-Singletary* errors. I will then discuss some of the problems stemming from that approach. Lastly, I will prescribe what, in my view, would be the better approach to remedies.[1]

I.

How did we get here? A criminal defendant has the right to be present at his sentencing. That right is rooted in the Fifth Amendment's Due Process Clause. *See United States v. Gagnon*, 470 U.S. 522, 526 (1985). In practice, this right is reflected in Federal Rule of Criminal Procedure 43(a)(3). That Rule provides that "the defendant must be

---

[1] Lest anyone think I am throwing stones, I joined *Rogers* in full. I appreciate our effort to be faithful to Rule 43 and the reasons behind it. But my thinking has evolved as we continue to address these errors with our required full-resentencing remedy.

16

present at . . . sentencing." To protect a criminal defendant's right to be present, a district court must orally pronounce a defendant's sentence in the defendant's physical presence. *See United States v. Lawrence*, 248 F.3d 300, 303–04 (4th Cir. 2001).

A Rule 43(a)(3) problem occurs when the district court's oral sentencing pronouncement differs from the later written judgment. When the oral and written sentences diverge, the parties may justifiably wonder what the defendant's *actual* sentence is. But this is not a new problem. A long line of cases establishes a general rule that if a criminal defendant's eventual written judgment conflicts with the oral pronouncement at sentencing, the oral pronouncement controls over the written judgment. *See Rakes v. United States*, 309 F.2d 686, 687 (4th Cir. 1962) ("[T]he sentences to be served in these cases are those pronounced in the defendant's presence in open court and not those set out in the written judgments."); *see also United States v. Morse*, 344 F.2d 27, 31 n.1 (4th Cir. 1965) ("To the extent of any conflict between this written order and the oral sentence, the latter is controlling."). Our sister circuits have also recognized this rule. *See United States v. Daddino*, 5 F.3d 262, 266 n.5 (7th Cir. 1993) (collecting cases).

A few years ago, our court addressed this issue in the context of discretionary conditions of supervised release not announced at sentencing but that appear in the written judgment. In *United States v. Rogers*, we held "that all non-mandatory conditions of supervised release must be announced at a defendant's sentencing hearing." 961 F.3d 291, 296 (4th Cir. 2020). In that case, a criminal defendant's written judgment included 22 non-mandatory or "discretionary" terms of supervised release that were not pronounced orally at sentencing. *Id.* at 295. We first analyzed whether "a condition that was not pronounced

17

orally at sentencing may be included in a later-filed written judgment without creating a conflict that will nullify the condition." *Id.* at 296. Because discretionary terms, unlike mandatory ones, cannot be imposed without a district court's "individualized assessment . . . that they are justified in light of the statutory factors," *id.* at 297, we held that those terms must be orally pronounced[2] to protect a criminal defendant's rights under Rule 43(a). *Id.*

Requiring oral pronouncement of discretionary conditions, we reasoned, primarily protects a criminal defendant's ability to object and "contest whether a discretionary condition is appropriate under all the relevant circumstances." *Id.* at 298. Additionally, "the requirement that discretionary conditions be orally pronounced at sentencing brings the pronouncement rule into line with the requirement that discretionary conditions be adequately explained." *Id.* (citing *United States v. McMiller*, 954 F.3d 670, 676 (4th Cir. 2020)).

In *Rogers*, we also prescribed a unique remedy for this situation. We accepted the defendant's argument that "the oral sentence prevails, rendering the challenged conditions nullities," *id.* at 295–96. But we then vacated the defendant's entire sentence and remanded to the district court for a full resentencing, *id.* at 301. We suggested, however, that a

---

[2] But along with this bright-line rule, *Rogers* also stated that courts may properly orally pronounce a discretionary condition of supervised release through incorporation, without pronouncing each condition separately. That is, a district court satisfies its obligation to orally pronounce discretionary conditions by "expressly incorporating . . . a court-wide standing order that lists certain conditions of supervised release," because the "later-issued written judgment that detail[ed] those conditions may be construed fairly as a 'clarification' of an otherwise 'vague' oral pronouncement." 961 F.3d at 299.

different error potentially required this remedy. "Many of the discretionary conditions listed in Rogers' written judgment are recommended by the Guidelines only under circumstances not present in this case or are not recommended by the Guidelines at all." *Id.* at 301 n.3. So, we then claimed "that we would be required to vacate Rogers' sentence *no matter what rule we adopted.*" *Id*. (emphasis added). In other words, we vacated for a full resentencing in Rogers *not* because of any problematic discretionary conditions, but because another error necessitated it. But the remedy of a full sentencing stuck.

We reaffirmed and extended *Rogers* in *United States v. Singletary*. There, the criminal defendant's written judgment included two non-mandatory conditions that had not been pronounced at sentencing. *United States v. Singletary*, 984 F.3d 341, 343 (4th Cir. 2021). We reiterated that "[d]iscretionary conditions that appear for the first time in a subsequent written judgment . . . are nullities; the defendant has not been sentenced to those conditions, and a remand for resentencing is required." *Id.* at 344. We also extended this principle by holding that these types of errors fall outside the scope of an appeal waiver as part of a plea agreement. *See id.* at 345. Because "the heart of a *Rogers* claim is that discretionary conditions appearing for the first time in a written judgment in fact have *not* been 'imposed' on the defendant," any waiver of appeal rights concerning "the conviction and *whatever sentence is imposed*" did not cover the error. *Id.*

Notably, *Singletary* doubled down on *Rogers*' remedy—vacating and remanding for a full sentencing. We rejected the defendant's argument to take a blue pencil to the judgment, vacating any unannounced additional discretionary conditions. *See id.* at 346

19

("Under *Rogers*, the remedy for this error is not, as Singletary suggests, simply to strike the financial conditions from the written judgment.").

But we also rejected the government's request to limit vacatur and resentencing to the conditions at issue, grounding that idea in a criminal defendant's "unified sentence." *Id.* at 364 n.4. Instead, *Singletary* required a full resentencing because "*Rogers* drew no distinction between the defendant's supervised release sentence and his custodial sentence; instead, it simply vacated his entire sentence and remanded for resentencing." *Id.* We also said in dicta that a full resentencing "appears to be the proper approach, given that 'custodial and supervised release terms [are] components of one unified sentence.'" *Id.* (quoting *United States v. Ketter*, 908 F.3d 61, 65 (4th Cir. 2018)). Under that approach, "[t]reating custodial and supervised release terms as components of one unified sentence appropriately recognizes the interdependent relationship between incarceration and supervised release." *Ketter*, 908 F.3d at 65. Because terms of incarceration and discretionary conditions of supervised release are "complementary tools employed by judges when crafting an appropriate sentence," and because of the "reciprocal relationship between a prison sentence and a term of supervised release," *id.* at 65–66, *Singletary* suggests that a full resentencing is the proper way to remedy a violation of a defendant's right to be present.

## II.

What's wrong with this? Three things. One, the internal reasoning of our approach to *Rogers-Singletary* errors is inconsistent. Two, we have not been consistent in how we

20

remedy errors in written judgments generally and *Rogers-Singletary* errors specifically. Three, our stated remedy for *Rogers-Singletary* errors—full resentencing—is unnecessary to remedy *Rogers-Singletary* errors and at odds with how other courts of appeal address the same issue.

First, the description of any unannounced conditions as "nullities" in *Rogers* and *Singletary* is both inconsistent with the remedy those decisions require and departs from our prior precedent. By describing a condition detailed in the written judgment but unannounced at sentencing as a "nullity," one might naturally assume that we would remedy the problem by ordering that this condition simply is not part of the judgment. Indeed, *Singletary*'s approach to appellate waiver accepts that unannounced conditions *do not exist. See* 984 F.3d at 345 ("[T]he heart of a *Rogers* claim is that discretionary conditions appearing for the first time in a written judgment in fact have *not* been 'imposed' on the defendant."). But if an unannounced condition is really a nullity, why shouldn't the remedy be to remand to conform the written judgment to the oral sentence? That is, if the criminal defendant has never actually been sentenced to an unannounced condition, then why not take a blue pencil to the judgment to conform it to the oral pronouncement? Moreover, isn't taking a blue pencil to conform the written judgment more faithful to our own precedent on the right to be present? *See Morse*, 344 F.2d at 31 n.1 ("The proper remedy is for the District Court to correct the written judgment so that it conforms with the sentencing court's oral pronouncements.").

We are also beginning to see the uneven consequences of labeling unannounced supervised release conditions nullities. We reasoned in *Singletary* that referring to at-issue

21

conditions as nullities moves these types of errors outside the scope of a typical appeal waiver. *See* 984 F.3d at 345. But we also recently explained in *United States v. Brantley* that calling something a nullity "does not make the written judgment entered [by a district court] invalid." No. 22-4166, 2023 WL 8215209, at *3 (4th Cir. Nov. 28, 2023). And because those judgments, "no matter how assertedly incorrect, are presumptively valid and binding," defendants cannot use the "nullity" language to avoid our appellate deadlines. *Id.*

Second, our approach to these errors inconsistently characterizes the right to be present as procedural at times and as substantive at others. In *Rogers*, we explained the "chief" reason for the requirement that a criminal defendant be present at sentencing was to preserve the ability to object and "contest whether a discretionary condition is appropriate under all the relevant circumstances." 961 F.3d at 298. This language sounds procedural. But we have also used substantive language to defend the remedy. *See Singletary*, 984 F.3d at 346 n.4 ("[C]ustodial and supervised release terms [are] components of one unified sentence.") (quoting *Ketter*, 908 F.3d at 65). Indeed, declaring a portion of a judgment as a "nullity" changes the *substance* of a criminal defendant's sentence. And the majority's holding here that defendants are entitled to a full resentencing for *Rogers-Singletary* errors "if they so request," Maj. Op. at 15, suggests the right might be substantive.

The inconsistency in classifying the right to be present as sometimes substantive, sometimes procedural, has also led us to prescribe vastly different remedies for similar types of errors. While *Rogers* and *Singletary* require a full sentencing for unannounced conditions that show up in the later written judgment, we do not always require that. In

22

some cases, when there is a *slight* difference between what was said at sentencing and what ends up in the written judgment, we have allowed for a limited remand to fix the written judgment rather than remanding for a full resentencing. *See United States v. Locklear*, No. 21-4161, 2023 WL 2300394 (4th Cir. Mar. 1, 2023). In *Locklear*, the district court orally pronounced that the defendant would support his "children," but the written judgment stated that he would support his "dependent." *Id.* at *1. We held that "the remedy for a conflict of this nature is to remand to the district court to correct the written judgment so that it conforms with the sentencing court's oral pronouncements." *Id.* (internal quotations omitted).

But we've also looked to the written judgment itself to resolve discrepancies. *See United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th Cir. 2003) ("In light of this ambiguity, we shall look to the written criminal judgment as evidence of the sentencing court's intent."). In *Osborne*, the defendant challenged her 188-month *written sentence* after the district court *orally pronounced* a sentence of 180 months. *Id.* But because the sentencing guidelines were adopted and 180 months would have fallen below the range, we viewed the 180-month orally pronounced sentence as "ambiguous." *Id.* Using the written judgment, along with the fact the court intended to follow the guidelines, we essentially *corrected* the oral pronouncement when "we conclude[d] that the district judge intended to sentence Osborne to 188 months" and affirmed the written judgment. *Id.*

As noted by the majority, Maj. Op. 14–15 & n.3, where we confront a criminal defendant with a mandatory life sentence, we have forgone resentencing altogether. In *United States v. Calderon*, the defendant alleged a *Rogers* error because the court did not

23

announce two financial-related conditions of supervised release at his sentencing hearing that later appeared on his written judgment. No. 19-4907, 2022 WL 898012 at *1 (4th Cir. Mar. 28, 2022). We held that "[i]n these circumstances, we vacate the discretionary conditions of supervised release." *Id.* But we declined a full resentencing "[g]iven Calderon's mandatory life sentence" and simply blue penciled away the at-issue conditions. *Id.* From these cases, it is not even clear that we have a preferred remedy for *Rogers-Singletary* errors.

Third, our approach of vacating for a full sentencing is an outlier among other circuits. Indeed, at the same time *Rogers* announced that we were "following the Fifth and Seventh Circuits" in recognizing this error, 961 F.3d at 297, neither circuit appears to require a full resentencing as the remedy. In *United States v. Diggles*, on which *Rogers* relies, the Fifth Circuit affirmed a decision that simply vacated unannounced conditions as the remedy. *See* 957 F.3d 551, 559 (5th Cir. 2020) (en banc). And in the Seventh Circuit's decision in *United States v. Anstice*, the court "vacate[d] the non-mandatory additional conditions provided in the written judgment, and remand[ed] to allow the district court to modify and reconsider Anstice's sentence with respect to the two non-mandatory conditions of supervised release." 930 F.3d 907, 910 (7th Cir. 2019). Other circuits take a similar tack. *See, e.g., United States v. Handakas*, 329 F.3d 115, 119 (2d Cir. 2003) ("[R]emand[ing] for reconsideration of the condition of supervised release restricting the Defendant's employment."); *United States v. Montoya*, 82 F.4th 640, 656 (9th Cir. 2023) (en banc) ("[R]emand[ing] to the district court for the limited purpose of reconsidering the supervised release conditions we have vacated herein." (internal

24

quotation marks omitted)). As far as I can tell, we are the only circuit to require a full

resentencing to remedy a violation of the right to be present.

To summarize, the full resentencing remedy mandated by *Rogers* and *Singletary*

seems inconsistent with declaring unannounced supervised release conditions nullities and

with *Morse*'s directive to conform written judgments to oral sentences. What's more, we

do not always follow what we seem to require in *Rogers* and *Singletary*. Finally, we do not

have much company in our full-resentencing approach.


III.

Where do we go from here? Should we stick with what we said in *Rogers* and

*Singletary* and stop the deviations? Should we reiterate that a full resentencing is generally

the appropriate remedy for *Rogers-Singletary* errors but continue to articulate exceptions?

Or is there a better approach?

To answer these questions, we should first be clear on what we are trying to

accomplish. Our goal should be to correct the procedural error—the defendant needs to be

physically present when any discretionary conditions are announced so that he can object

to the conditions if necessary. A second goal should be to resolve any ambiguity between

the oral pronouncement and the written judgment by determining the district court's intent.

And those goals point toward a more targeted remedy than a full resentencing. I see no

reason to require a full resentencing. Our approach so far seems to be like using a

sledgehammer to swat a fly. Instead, I suggest that for a mismatch between a district court's

oral pronouncement and written judgment, we should follow the Second Circuit's approach

25

in *Handakas*, 329 F.3d at 119, and remand for a *limited resentencing*—giving district courts the choice of whether to vacate problematic conditions or to orally pronounce any unannounced condition. Under the Second Circuit's approach, when there is a mismatch between the oral pronouncement and written judgment, the court remands for the limited purpose of allowing the district court to reconsider imposition of the at-issue condition, which also affords the defendant an opportunity to be present. *See id.* In practice, that gives the district court a choice. "On remand, if the district court intends to impose a [discretionary condition], it must give [the defendant] an opportunity to object and, if any such objections are overruled, orally announce the [condition] and again include [it] in a new written judgment. If the district court determines not to impose [the condition] on remand, an amended judgment must be issued deleting [it]." *United States v. Grebinger*, No. 20-1025-CR, 2021 WL 5142709, at *4 (2d Cir. Nov. 5, 2021).

This approach would remedy the violation of a defendant's procedural right to be present under Rule 43. And it would also be the best way to clarify the intent of a sentencing judge: "What was driving *this* judge's decision to impose *this* sentence for *this* defendant?" *United States v. Griffin*, No. 21-50294, 2022 WL 17175592, at *6–8 (5th Cir. Nov. 23, 2022) (Oldham, J., dissenting). After all, "a sentencing judge is the world's leading expert on his own thought process." *Id.*

26

Of lesser importance is drawing a line that prioritizes oral over written or written over oral.[3] Why do we need to pick a winner? Doing so may be what has led to our inconsistency in remedying *Rogers-Singletary* errors. Instead, why not just recognize that we have an ambiguity between the announced sentence and the written judgment and attempt to clear it up in a way that complies with Rule 43? Whether it be an unannounced condition that shows up for the first time in the written judgment, or slightly incongruent wording, we aim to understand what the sentencing judge was attempting to do. That is, our job should be to figure out whether the mismatch was on *purpose* (meaning the district court meant to add something or clarify something using the written judgment) or by *mistake* (meaning the district court simply forgot to orally announce conditions or did not do so clearly). In my view, our remedy should help resolve the intent questions that emerge during a mismatch while protecting a defendant's right to be present under Rule 43.

Finally, adopting a limited remand approach would bring us in line with the remedy we provide for similar errors. For example, in *United States v. McMiller*, 954 F.3d 670 (4th

---

[3] I struggle with our current logic that privileges an oral pronouncement over a written judgment. In virtually all other legal contexts, it is the written judgment, not an oral pronouncement from the bench, that governs the parties' rights and obligations. *See Griffin*, 2022 WL 17175592 at *9–10 (Oldham, J., dissenting) (describing the fundamental primacy of written judgments in our legal system). Additionally puzzling is that we seem to acknowledge that written judgments sometimes control over oral pronouncements. Under Federal Rule of Criminal Procedure 32.1, a federal court may later modify or enlarge the conditions of supervised release—without any oral pronouncement. More telling, *Rogers* itself says that the written can control in certain circumstances: a mandatory condition doesn't have to be pronounced because a criminal defendant should be on notice. And as mentioned above, we sometimes defer to the written judgment to understand what was said at the oral pronouncement. *United States v. Osborne*, 345 F.3d 281, 283 n.1.

Cir. 2020), we addressed supervised release special conditions that were not explained. After concluding that the two special conditions imposed on the criminal defendant were "procedurally unreasonable," we remanded to the district court for further explanation. *Id*. at 677. We did not blue pencil the conditions away. We did not order a full sentencing. Instead, we cured a procedural error with a proportionate remedy.

In my view, it is time to rethink our approach to the remedy for *Rogers-Singletary* errors. A limited remand would provide flexibility to the district court judge while fully protecting the defendant's right to be present.

28