**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-4163**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRENCE VERNON DUNLAP,

Defendant - Appellant.

_____

**No. 22-4185**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRENCE VERNON DUNLAP, a/k/a Tex,

Defendant - Appellant.

_____

Appeals from the United States District Court for the District of South Carolina, at Columbia.  Mary G. Lewis, District Judge.  (3:19-cr-00781-MGL-1; 3:17-cr-00811-MGL-13)

_____

Submitted:  November 22, 2024                    Decided:  January 14, 2025

Before GREGORY and HEYTENS, Circuit Judges, and TRAXLER, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ON BRIEF:**  Thomas Kieran Maher, LAW OFFICE OF AMOS TYNDALL PLLC, Carrboro, North Carolina, for Appellant.  Adair F. Boroughs, United States Attorney, Columbia, South Carolina, Andrea G. Hoffman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In 2016, a task force led by the Federal Bureau of Investigation began an investigation into the drug trafficking activities of brothers Dantrell Smith and Santerrio Smith ("S. Smith"). Through a variety of investigative techniques, including wiretaps, the task force discovered the involvement of multiple individuals in the drug trafficking conspiracy, including Terrence Vernon Dunlap. Some of those individuals pled guilty, but Dunlap and others (collectively, "Defendants") chose to go to trial. The jury convicted Dunlap of conspiracy to possess with intent to distribute and distribute five kilograms or more of a mixture or substance containing cocaine and 100 grams or more of a mixture or substance containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (Count 1); using a communication facility during the commission of that conspiracy, in violation of 21 U.S.C. § 843(b) (Count 21); and possession with intent to distribute and distribution of a quantity of cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 49). While the drug trafficking trial was ongoing, Dunlap, his mother, and his sister confronted one of the jurors. All three pled guilty to jury tampering and aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 1503(a), (b)(2) (Count 1A). In these consolidated appeals, Dunlap challenges his convictions and his 232-month sentence. We affirm.

I.

Dunlap argues that the district court erred in denying Defendants' motion to suppress the evidence obtained from the wiretaps. Specifically, he argues that the wiretap orders were not supported by probable cause or a showing that normal investigative

3

techniques had failed.  Dunlap, however, correctly observes that we rejected these same arguments in an appeal brought by some of his co-conspirators.  *See United States v. Pernell*, Nos. 20-4135/4044, 21-4172, 2023 WL 3050983, at *1-3 (4th Cir. Apr. 24, 2023).

## II.

Dunlap challenges the district court's denial of his motion to sever the substantive drug trafficking offense in Count 49 from the drug trafficking conspiracy offense in Count 1 and the related use of communication facility offense in Count 21.  Specifically, he argues that the joinder of the offenses prejudiced him because the Government failed to establish that the drug transaction alleged in Count 49 was related to the conspiracy.

"Under Federal Rule of Criminal Procedure 8(a), a single indictment may charge a defendant with multiple counts if the offenses charged 'are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.'"  *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (quoting Fed. R. Crim. P. 8(a)).  "Rule 8(a) permits very broad joinder because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding."  *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2015) (cleaned up).  But Rule 8(a) "cannot be stretched to cover offenses which are discrete and dissimilar," as "[j]oinder of unrelated charges creates the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense."  *Id.* (cleaned up).  "Whether charges are properly joined in an indictment is a question of law that we review de novo."  *Id.* (emphasis omitted).

4

But even if offenses are properly joined, severance is appropriate if the defendant establishes that he would be prejudiced by the joinder. Fed. R. Crim. P. 14(a). A defendant moving to sever properly joined counts "bears the burden of demonstrating a strong showing of prejudice," *Branch*, 537 F.3d at 341 (internal quotation marks omitted), "and it is not enough to simply show that joinder makes for a more difficult defense," *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984). Indeed, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgement about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "[T]he district court's denial of a motion to sever should be left undisturbed, absent a showing of clear prejudice or abuse of discretion." *Branch*, 537 F.3d at 341 (internal quotation marks omitted); *see United States v. Hornsby*, 666 F.3d 296, 309 (4th Cir. 2012) ("Where offenses are properly joined under Rule 8(a), severance of the offenses is rare.").

We conclude that the district court did not abuse its discretion in denying Dunlap's motion to sever Count 49 from Counts 1 and 21. Contrary to Dunlap's argument, the Government established that the transaction alleged in Count 49 was related to the conspiracy. The transaction occurred during the conspiracy at a place often used by members of the conspiracy for distributing drugs and involved the same kind of drugs and several of the same characters. But even if Count 49 was not related to the conspiracy, we conclude that the joint trial did not prejudice Dunlap because there was more than enough evidence to convict him of the conspiracy, including the intercepted calls and the testimony of multiple co-conspirators.

5

III.

Dunlap argues that the district court erred in granting the Government's motion to limit the cross-examination of a cooperating witness ("CW") who testified about Dunlap's involvement in the conspiracy.  Dunlap wanted to question the CW about the mandatory life sentence he faced when he first decided to cooperate with the Government.  The Government opposed that line of questioning because the CW no longer faced a mandatory life sentence after application of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 4194.  To avoid jury confusion and nullification, the district court prohibited defense counsel from questioning the CW about the mandatory life sentence.

"A trial judge has wide latitude to impose reasonable limits on cross-examination to address concerns of prejudice, confusing the jury, relevance, and repetition." *United States v. Kiza*, 855 F.3d 596, 604 (4th Cir. 2017) (internal quotation marks omitted). Accordingly, "[w]e review for abuse of discretion a trial court's limitation on a defendant's cross-examination of a prosecution witness." *Id.* at 603-04 (internal quotation marks omitted).  And we find that the district court abused its discretion in denying the defendant an opportunity to cross-examine a witness, we will not reverse if the error was harmless. *United States v. Turner*, 198 F.3d 425, 430-31 (4th Cir. 1999).

"[A] defendant's right to cross-examine cooperating witnesses about sources of potential bias is guaranteed by the Confrontation Clause of the Constitution." *United States v. Cropp*, 127 F.3d 354, 358 (4th Cir. 1997).  "A witness's understanding of the potential penalties faced prior to entering into a plea agreement may demonstrate bias and prejudice, as well as the motive of the witness for testifying against the defendant and for

6

the prosecution." *Turner*, 198 F.3d at 430. Accordingly, such an inquiry is "highly relevant to testing the witness's credibility." *Id.*

But while a defendant may ask a cooperating witness whether he hopes to receive some benefit in exchange for his testimony, a district court may prohibit the defendant from asking questions about the "specific penalties" the witness faced before pleading guilty. *Cropp*, 127 F.3d at 358-59. As we explained, if the jury learned of the specific sentence a cooperating witness avoided by pleading guilty, the jury could infer that the defendant would receive a similarly long sentence if convicted. *Id.* The jury, therefore, might acquit the defendant out of sympathy. *Id.* at 359. And given that a defendant may still reveal a cooperating witness's potential bias by asking whether he expects to receive some benefit for his testimony, the risk of jury nullification outweighs the probative value of information about specific sentences. *See id.*

Dunlap relies on *United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007) (en banc), to contend that a mandatory life sentence is qualitatively different than other penalties a witness seeks to avoid by cooperating with the government. The Ninth Circuit generally holds, as we did in *Cropp*, "that it is not error for the district court to prohibit cross-examination regarding the potential maximum statutory sentence that the witness faces," as "such evidence [is] at best marginally relevant to a witness'[s] potential bias and motive in testifying." *Larson*, 495 F.3d at 1106 (internal quotation marks omitted). But the Ninth Circuit explained that a "potential maximum statutory sentence that a cooperating witness *might* receive . . . is fundamentally different from the *mandatory* minimum sentence that the witness *will* receive in the absence of a motion by the [g]overnment." *Id.* (emphases in

7

original). While "a defendant seldom receives the maximum penalty permissible under the statute of conviction," "the fact that . . . a cooperating witness faced a mandatory life sentence without the possibility of release in the absence of a government motion is highly relevant to the witness'[s] credibility." *Id.* The mandatory life sentence "is a sentence that the witness knows *with certainty* that he will receive unless he satisfies the government with substantial and meaningful cooperation so that it will move to reduce his sentence." *Id.* (emphasis in original).

But Dunlap omits that the *Larson* court found that the violation of the Confrontation Clause was harmless. *Id.* at 1107-08. The court explained that the government's case against the defendants was strong even without the cooperating witness's testimony; that the trial "court instructed the jury that it should view the testimony of the cooperating witnesses with greater caution than that of other witnesses"; and that counsel was able to explore through cross-examination the cooperating witness's "criminal past, history as a drug user and seller, and desire to obtain a lesser sentence through his testimony against his co-conspirators." *Id.* at 1108.

As in *Larson*, Dunlap's drug trafficking conspiracy conviction did not depend on the CW's testimony, as other cooperating witnesses provided even more damaging testimony about Dunlap's involvement in the conspiracy. The CW's testimony, however, established that Dunlap was guilty of Count 21, as the CW recognized Dunlap's voice on the intercepted call. But, as in *Larson*, counsel was able to effectively cross-examine the CW about his potential motivation to lie, eliciting that the CW was hoping to reduce his significant statutory penalties by testifying. The Government also questioned the CW

8

about his drug addiction, his prior conviction for providing false information to the police, the significant benefit he received from his plea agreement, and the downward departure he expected for his substantial assistance. Finally, the district court instructed the jury to examine the testimony of drug addicts, convicted felons, and cooperating witnesses with greater care than the testimony of an ordinary witness. Based on these factors, we conclude that, even if a mandatory life sentence is qualitatively different than any other sentence a witness is seeking to avoid through his cooperation, any error in limiting the cross-examination of the CW here was harmless.

## IV.

Moving on to the jury tampering conviction, Dunlap argues that the district court plainly erred by accepting his plea. Specifically, he contends that the district court was required to conduct the plea colloquy with special care because the court was aware that his plea was part of a package deal—that is, if any of the Dunlaps declined to plead guilty, then all three would go to trial.

"Because [Dunlap] did not attempt to withdraw his guilty plea in the district court, we review this claim for plain error." *United States v. Kemp*, 88 F.4th 539, 545 (4th Cir. 2023) (internal quotation marks omitted). "Under that standard, [Dunlap] can prevail and withdraw his plea only if he demonstrates an obvious or plain error that affected his substantial rights." *Id.* (internal quotation marks omitted). "[T]o establish an effect on his substantial rights in this context, [Dunlap] bears the burden of establishing a reasonable probability that, but for the error, he would not have entered the plea." *Id.* (internal quotation marks omitted).

9

The promise of adverse or lenient treatment for a third party is a legitimate tool in the plea bargaining process that does not render a plea per se invalid. *Harman v. Mohn*, 683 F.2d 834, 838 (4th Cir. 1982). Even so, "[s]pecial care must be taken to determine the voluntariness of the plea in such circumstances," as the promise of leniency for a third party in a plea agreement "might pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider." *United States v. Morrow*, 914 F.2d 608, 613 (4th Cir. 1990). When a plea agreement affects the interests of a third party, we have considered many factors to assess whether the plea was voluntary, including: (1) whether the agreement was fully disclosed to the court; (2) whether the third party had already been charged; (3) whether there was probable cause to support the potential prosecution of the third party; (4) whether the parties were represented by separate counsel; (5) whether the defendant readily admitted guilt at the plea hearing; (6) whether the defendant disputed the voluntariness of the plea agreement at the time of the plea; and (7) whether there was evidence that the third party pressured the defendant to plead guilty. *See id.*; *Harman*, 683 F.2d at 837-38.

We conclude that the district court took the required special care to ascertain whether Dunlap's plea was voluntary. After learning about the package deal, the district court confirmed that neither the Government nor Dunlap's family members bribed him or threatened any kind of physical or financial harm if he did not plead guilty. Apart from this colloquy, other factors demonstrated the voluntariness of Dunlap's plea. Specifically, Dunlap's mother and sister had already been charged, meaning there was probable cause

10

for their prosecution; all three Dunlaps had their own attorneys; and Dunlap readily admitted his guilt based on the factual basis provided by the Government.

Dunlap, however, contends that the district court was obligated to ask more questions about the package deal, like when he learned about the deal or whether he had time to weigh the benefit to his family members against the sacrifice of his trial rights. While the district court did not ask those specific questions, it inquired whether Dunlap had sufficient time to discuss the plea agreement with counsel and whether he was satisfied with counsel's services. Dunlap expressed his displeasure with the timeframe and counsel's services, but his concern was about his Sentencing Guidelines range, which the district court correctly advised him on multiple occasions would not be known until the sentencing hearing. Thus, Dunlap's hesitancy in pleading guilty was caused by his misunderstanding of the sentencing process. He expressed no hesitancy about the package deal other than that it made the decision whether to plead guilty more difficult. Accordingly, even if the district court plainly erred, we conclude that Dunlap has not established that he would not have pled guilty had the court asked him more probing questions about the package deal.

V.

"We review a district court's sentencing decisions under a deferential abuse-of-discretion standard." *United States v. McCabe*, 103 F.4th 259, 285 (4th Cir. 2024) (internal quotation marks omitted), *cert. denied*, No. 24-5480, 2024 WL 4486494 (U.S. Oct. 15, 2024). And "[w]hen considering a challenge to a district court's application of the Guidelines, [we] review[] factual findings for clear error and legal conclusions de novo."

11

*United States v. Freitekh*, 114 F.4th 292, 317 (4th Cir. 2024) (internal quotation marks omitted). "Under the clear error standard, we will only reverse if left with the definite and firm conviction that a mistake has been committed." *United States v. Claybrooks*, 90 F.4th 248, 253 (4th Cir. 2024) (internal quotation marks omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *United States v. Charboneau*, 914 F.3d 906, 912 (4th Cir. 2019) (internal quotation marks omitted).

A.

Dunlap challenges the application of the two-level enhancement for possession of a firearm during the commission of the drug trafficking conspiracy. *See* U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2018). This enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1 cmt. n.11(A).

The district court applied the enhancement here because the CW told the investigating officers that he saw a firearm in a door compartment of Dunlap's vehicle when Dunlap was visiting S. Smith to either pick up drugs or pay S. Smith with drug proceeds. Dunlap argues that the district court clearly erred in applying the enhancement because the CW was unreliable and, therefore, his statement was not sufficiently reliable to support the enhancement. Dunlap emphasizes that the CW never mentioned that he saw a firearm during his lengthy trial testimony, that no other witnesses claimed to see Dunlap

12

with a firearm, and that the Government failed to present any evidence at the sentencing hearing to support the enhancement. Dunlap also criticizes the district court for failing to make any findings about the CW's credibility generally or about the credibility of his statement about the firearm.

"It is well established that a court may, for purposes of sentencing, consider any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Mondragon*, 860 F.3d 227, 233 (4th Cir. 2017) (internal quotation marks omitted). "[T]he defendant bears an affirmative duty to show that the information in the presentence report [(PSR)] is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *Id.* (internal quotation marks omitted). A "district court's determination that evidence is sufficiently reliable to be considered at sentencing is reviewed for an abuse of discretion." *United States v. Pineda*, 770 F.3d 313, 318 (4th Cir. 2014).

At a sentencing hearing, the district court "must—for any disputed portion of the [PSR] or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). "A sentencing court's findings on controverted matters ensure a record as to how the district court ruled on any alleged inaccuracy in the PSR and allows effective appellate review of the sentence imposed." *United States v. Bolden*, 325 F.3d 471, 497 (4th Cir. 2003) (cleaned up). But "the court need not articulate findings as to disputed factual allegations with minute specificity." *Id.* (cleaned up). In fact, "[a] district court may adopt the PSR's findings in

13

toto as the factual basis for a sentencing decision so long as it clearly resolved any factual disputes." *United States v. Burnley*, 988 F.3d 184, 190 (4th Cir. 2021) (cleaned up). Nonetheless, "an enhancement that rests only on a general citation to the PSR may still fail clear error review if the record as a whole runs contrary to that conclusion." *Id.*

Dunlap is correct that there were reasons to question the CW's reliability, including his drug addiction, his criminal history, his motives for cooperating, and his purported bias against Dunlap. But these characteristics are not uncommon for a cooperating witness. Moreover, contrary to Dunlap's assertion, the district court explained why it believed the CW's statement. Specifically, the district court explained that the connection between the CW, S. Smith, and Dunlap was corroborated by the intercepted calls, which showed that the three men were engaged in the drug trafficking business together. We conclude that it was not clear error for the district court to credit the CW's statement and to find that the Government established by a preponderance of the evidence that Dunlap possessed a firearm during the course of the drug trafficking conspiracy.

## B.

Dunlap's final challenge is to the district court's calculation of the drug quantity attributed to him. "For sentencing purposes, the government must prove the drug quantity attributable to a particular defendant by a preponderance of the evidence." *United States v. Bell*, 667 F.3d 431, 441 (4th Cir. 2011). "The Guidelines notes instruct that when no known amount of drugs can be relied on to establish a defendant's attributable drug weight, the district court must 'approximate the quantity of the controlled substance' at issue." *United States v. Banks*, 104 F.4th 496, 526 (4th Cir. 2024) (quoting USSG § 2D1.1 cmt. n.5), *cert.*

14

*denied*, No. 24-5300, 2024 WL 4427486 (U.S. Oct. 7, 2024), *and cert. denied*, No. 24-5738, 2024 WL 4743162 (U.S. Nov. 12, 2024). When doing so, "district courts enjoy considerable leeway and may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *Id.* (internal quotation marks omitted). Nonetheless, "courts must exercise caution in estimating drug quantity at sentencing, and must not attribute speculative or scantily supported amounts to defendants." *Id.* (cleaned up). Thus, "we have cautioned that when the approximation is based only upon uncertain witness estimates, district courts should sentence at the low end of the range to which the witnesses testified." *Bell*, 667 F.3d at 441 (internal quotation marks omitted).

Dunlap contends that the district court clearly erred by counting the 1,000 grams of heroin derived from an intercepted call—Session 7334. We agree with Dunlap that this conversation was unintelligible and that the district court clearly erred in attributing 1,000 grams of heroin to him based on this conversation. But we agree with the Government that this error was harmless. The Guidelines prescribe a base offense level of 32 when the offense involves between 3,000 and 10,000 kilograms of converted drug weight. USSG § 2D1.1(c)(4). The converted drug weight for 1,000 grams of heroin is 1,000 kilograms. USSG § 2D1.1 cmt. n.8(D). Subtracting 1,000 kilograms from the total converted drug weight of 6,432.74 kilograms results in a converted drug weight of 5,432.74 kilograms, which still falls within the range for a base offense level of 32. USSG § 2D1.1(c)(4).

Dunlap also argues that the district court clearly erred by counting the quantity of crack cocaine derived from the CW's statement. We disagree. Again, while there were

15

reasons to doubt the CW generally, his statement about the quantity of crack cocaine was corroborated by the testimony of other cooperating witnesses and the intercepted calls. Accordingly, the district court did not clearly err in counting the quantity of crack cocaine derived from the CW's statement.

## VI.

Although we deny Dunlap's motion to relieve appellate counsel and proceed pro se, we grant his motion for leave to file a pro se supplemental brief. *See United States v. Gillis*, 773 F.2d 549, 560 (4th Cir. 1985). We have thoroughly reviewed Dunlap's pro se supplemental brief but have identified no valid ground for relief. Accordingly, we affirm Dunlap's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

16