**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4147**

---

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MALEK LASSITER, a/k/a Leeko,

Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Mark S. Davis, Chief District Judge.  (2:16-cr-00130-MSD-LRL-5)

---

Argued:  October 25, 2023                    Decided:  March 15, 2024

---

Before AGEE, WYNN, and RICHARDSON, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published opinion.  Judge Richardson wrote the opinion, in which Judge Wynn joined.  Judge Agee wrote a separate opinion concurring in part and concurring in the judgment.

---

**ARGUED:**  Paul G. Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Va., for Appellant.  Andrew C. Bosse, OFFICE OF THE U.S. ATTORNEY, Norfolk, Va., for Appellee.  **ON BRIEF:**  Richard D. Cooke, OFFICE OF THE U.S. ATTORNEY, Norfolk, Va., for Appellee.

RICHARDSON, Circuit Judge:

This is Malek Lassiter's second appeal from his nine convictions. On his first trip to this Court, we reversed four of Lassiter's nine counts. *See United States v. Simmons*, 11 F.4th 239, 248 (4th Cir. 2021). Now, he asks us to reverse two more: convictions for possessing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A). But Lassiter didn't challenge these convictions in the district court or in his first appeal, so his appeal triggers both plain-error review and the mandate rule. He seeks to evade these bars by arguing that a dramatic change in legal authority has rendered his convictions plainly erroneous.

According to Lassiter, the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022), dramatically changed what constitutes a "crime of violence" when it held that attempted Hobbs Act robbery isn't such an offense. This change, Lassiter says, means that attempted murder in aid of racketeering activity ("VICAR attempted murder")—on which his § 924(c)(1)(A) convictions were predicated—is not a crime of violence. He therefore asks us to vacate both convictions on this ground.

But we decline Lassiter's invitation. *Taylor* simply held that attempted Hobbs Act robbery isn't a crime of violence because Hobbs Act robbery can be committed without the use of force. Murder, by contrast, requires the use of force. So attempted murder necessarily requires the attempted use of force and fits cleanly within the definition of a crime of violence. § 924(c)(3)(A). We therefore reject Lassiter's contentions and affirm his § 924(c)(1)(A) convictions. But because of an inconsistency between the oral and written descriptions of one of Lassiter's supervised-release conditions, we vacate his

2

sentence in its entirety and remand for a full resentencing. *See United States v. Rogers*, 961 F.3d 291, 296, 300–01 (4th Cir. 2020).

## I.    Background

Lassiter's story begins with his attempt to join the Norfolk, Virginia-based branch of Nine-Trey Gangsters. [*Simmons*, 11 F.4th at 249.] In December 2015, he attended a meeting with three confirmed Nine-Trey members and their superior. [*Id.* at 251.] The superior instructed the four men to carry out a series of retaliatory attacks on a rival, Virginia Beach-based line of Nine-Trey Gangsters, and one of the men gave Lassiter a .38-caliber handgun. [*Id.*]

Lassiter and his three companions departed together in one car and drove to two of their targets' residences. [*Id.*] Fortunately, neither target was home. [*Id.*] They then drove to a house where they believed a third target resided. [*Id.*] Two of them approached the door, while Lassiter stood watch down the street. [*Id.* at 252.] Those two men shot the house's innocent occupant six times and ran back toward the car. [*Id.*] As they fled, neighbors who heard the commotion gathered outside their homes. [*Id.*] Lassiter discharged several rounds toward those witnesses. [*Id.*]

The government charged Lassiter with ten criminal counts for his involvement in the spree, and a jury convicted him on each count. [J.A. 70–73.] The district court then vacated one of the convictions and sentenced Lassiter to 420 months, which Lassiter appealed. [J.A. 122]. We vacated four of the remaining nine counts because of an impermissible constructive amendment of Lassiter's indictment and insufficient evidence. [*Simmons*, 11 F.4th at 248.] But we left five counts undisturbed: one count of racketeering

conspiracy, 18 U.S.C. § 1962(d); two counts of VICAR attempted murder in violation of Virginia law, § 1959(a)(5); and two counts of possessing or discharging a firearm in furtherance of a "crime of violence," § 924(c)(1)(A). The VICAR attempted murder charges were the crimes of violence supporting the § 924(c)(1)(A) charges. [J.A. 57–61, 71–72.]

On remand, the district court sentenced Lassiter to 300 months' imprisonment and imposed a five-year term of supervised release to follow. [J.A. 160.] During the sentencing proceedings, the court announced that Lassiter, as a term of his supervised release, must participate in a substance-abuse program if he tests positive for illicit-substance use, "with partial costs to be paid by him, to the extent he's capable" of paying. J.A. 161. But when the district court later memorialized this condition in the written judgment, it omitted the phrase "to the extent he's capable." J.A. 171.

Lassiter appealed. [J.A. 174–75.] Soon after, the Supreme Court decided *Taylor*.

## II.    Discussion

In this second appeal, Lassiter advances two arguments. He first argues that VICAR attempted murder is not a crime of violence in light of *Taylor* and asks us to vacate his § 924(c)(1)(A) convictions. He also argues that the district court's oral pronouncement of a supervised-release condition impermissibly conflicted with its written memorialization of that condition, requiring us to vacate his entire sentence.

We hold that VICAR attempted murder predicated upon violation of Va. Code Ann. §§ 18.2-26, -32, remains a crime of violence notwithstanding *Taylor*. But we agree that

4

the oral and written descriptions of Lassiter's supervised release were inconsistent, so we vacate his entire sentence and remand for a full resentencing.

### A.    Section 924(c)(1)(A) Challenge

#### 1.    Plain-error review and the mandate rule govern our review of this issue.

Lassiter did not challenge his § 924(c)(1)(A) convictions in the district court on the ground that VICAR attempted murder is not a crime of violence. We therefore must review this issue for plain error. *See* Fed. R. Crim. P. 52(b). Under plain-error review, Lassiter must establish (1) an error that (2) is "plain," and (3) affects his substantial rights. *Greer v. United States*, 593 U.S. 503, 507–08 (2021). An error is "plain" if it is "obvious" or "clear under current law" at the time of our review. *United States v. Olano*, 507 U.S. 725, 734 (1993); *Henderson v. United States*, 568 U.S. 266, 269 (2013). Yet even if Lassiter establishes these three elements, we cannot grant him relief unless the error "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

But Lassiter's case comes with an extra twist. Not only did he fail to raise this issue in the district court; he also failed to raise it in his prior appeal. So his case implicates the mandate rule. Besides "preclud[ing] a district court from doing what an appellate court has expressly forbidden it from doing," the mandate rule "forecloses litigation of issues . . . foregone on appeal or otherwise waived." *S. Atl. Ltd. P'ship of Tenn., LP v. Riese*, 356

5

F.3d 576, 584 (4th Cir. 2004) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)).[1]

Yet the mandate rule does not apply when: (1) controlling legal authority has changed dramatically; (2) significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; or (3) a blatant error in the prior decision will, if uncorrected, result in a serious injustice. *United States v. Pileggi*, 703 F.3d 675, 682 (4th Cir. 2013).

Lassiter must clear both high bars to obtain relief. He tries to do so by pointing to *Taylor*, 596 U.S. 845, which the Supreme Court decided several months after the district court entered judgment. Lassiter argues that *Taylor* was a dramatic change in controlling authority that rendered his § 924(c)(1)(A) convictions plainly erroneous. But it did not.

> ### 2. VICAR attempted murder, premised on attempted murder under Virginia law, is a crime of violence, even after *Taylor*.

Here we confront a maze of statutes. We enter the labyrinth because Lassiter challenges his convictions under § 924(c)(1)(A), which prohibits possessing a firearm in furtherance of a "crime of violence." A crime of violence is, in turn, defined in § 924(c)(3)(A) as an offense that "has as an element the use, attempted use, or threatened

---

[1] The terminology in this area is somewhat muddled. While we have described the principle "that a question that could have been but was not raised on one appeal cannot be resurrected on a later appeal to the same court in the same case" as a function of the mandate rule, other courts view it as a species of forfeiture, waiver, or abandonment. 18B Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction* § 4478.6 (3d ed. 2023). Nomenclatural and theoretical differences aside, the operative principle is the same in our jurisdiction as it is in others, and our application is guided by many of the same practical considerations. *See Doe v. Chao*, 511 F.3d 461, 465–66 (4th Cir. 2007) ("The mandate rule serves two key interests, those of hierarchy and finality. . . . 'Repetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on . . . hardworking district and appellate judges.'" (second omission in original) (citation omitted)).

use of physical force against the person or property of another." To be convicted under § 924(c)(1)(A), therefore, a defendant must have committed a predicate crime that meets § 924(c)(3)(A)'s definition of a crime of violence.

We determine whether a crime fits this definition by applying either the standard categorical approach or, in narrow set of cases, the modified categorical approach. *See Simmons*, 11 F.4th at 253–54. Under the categorical approach, "the facts of a given case are irrelevant." *Borden v. United States*, 593 U.S. 420, 424 (2021); *see also United States v. Redd*, 85 F.4th 153, 170–71 (4th Cir. 2023). The inquiry is simply whether, looking at the elements of the offense alone, we can know that the government proved that the defendant used, attempted to use, or threatened to use force against another. *See Descamps v. United States*, 570 U.S. 254, 261 (2013). And to answer that question, we must "mull through any number of hypothetical ways to commit a crime that have nothing to do with the facts" underlying the predicate § 924(c) offense. *United States v. Burris*, 912 F.3d 386, 409 (6th Cir. 2019) (Thapar, J., concurring). "If the least culpable conduct punished by the underlying offense can be committed without" the use, attempted use, or threatened use of force, then the offense "is not 'categorically' a 'crime of violence.'" *United States v. Davis*, 53 F.4th 168, 171 (4th Cir. 2022) (quoting *United States v. Taylor*, 979 F.3d 203, 207 (4th Cir. 2020), *aff'd*, 596 U.S. 845).

The modified categorical approach, by contrast, applies to "divisible" statutes that "set[ ] out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257. When assessing such a divisible statute, we "determine which statutory phrase was the basis for the conviction by consulting . . . charging documents, plea agreements,

7

transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010). We then apply the categorical approach to determine whether that offense is a crime of violence. *Simmons*, 11 F.4th at 254.

The indictment and jury verdict forms show that Lassiter's predicate offense was VICAR attempted murder, premised on the state offense of attempted murder under Virginia Code §§ 18.2-26, -32, for the purpose of gaining entrance to the Nine-Trey Gangsters.[2] [J.A. 58-61, 71–72] A VICAR attempted murder conviction like Lassiter's requires the government to prove that: (1) there was an "enterprise"; (2) the enterprise was engaged in "racketeering activity"; (3) the defendant "attempt[ed] . . . to commit murder"; (4) the attempted murder violated "the laws of any State or the United States"; and (5) the attempted murder was "for the purpose of gaining entrance to . . . [the] enterprise engaged in racketeering activity." § 1959(a)(5); *see United States v. Manley*, 52 F.4th 143, 147, 149 (4th Cir. 2022). And attempted murder under Virginia law requires the government to prove "(1) a 'specific intent to kill the victim'[ ] and (2) some overt act in furtherance of that intent." *Simmons*, 11 F.4th at 271 (quoting *Commonwealth v. Herring*, 758 S.E.2d 225, 235 (Va. 2014)); *see also Johnson v. Commonwealth*, 163 S.E.2d 570, 573 (Va. 1968).

We must therefore consider whether Lassiter's VICAR attempted murder conviction requires proof of the "use, attempted use, or threatened use of physical force."

---

[2] We apply the modified categorical approach because the VICAR statute— § 1959(a)—is divisible. *See United States v. Thomas*, 87 F.4th 267, 272 (4th Cir. 2023).

8

§ 924(c)(3)(A); *Thomas*, 87 F.4th at 272. Although we could answer this by determining what qualifies as attempted murder under federal law, *In re Thomas*, 988 F.3d 783, 791–92 (4th Cir. 2021), we focus instead on the elements of attempted murder under Virginia law. That's because we have already held that both first- and second-degree murder in Virginia are crimes of violence. *See United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019); *Manley*, 52 F.4th at 149, 151. First-degree murder under Virginia law "'requires the use of force capable of causing physical pain or injury to another person' irrespective [of] whether that force is exerted directly or indirectly by a defendant." *Mathis*, 932 F.3d at 265 (quoting *In re Irby*, 858 F.3d 231, 236 (4th Cir. 2017)). So even the supposed "least culpable conduct" punished under the first-degree murder law—murder by "poison[ing]"—requires the use of force. *Id.* at 264–65. And second-degree murder under Virginia law is also a crime of violence because it "necessarily requires conduct that uses physical force against another." *Manley*, 52 F.4th at 149, 151 (emphasis omitted).

From this it follows that attempting to commit murder under Virginia law is also a crime of violence. Section 924(c)(3)(A) provides that a crime of violence may have as an element the use *or attempted use* of force. And as we explained in *United States v. Taylor* (later affirmed by the Supreme Court), when "the substantive crime of violence invariably involves the use of force, the corresponding attempt to commit that crime necessarily involves the attempted use of force." 979 F.3d at 209; *see also Alvarado-Linares v. United States*, 44 F.4th 1334, 1347 (11th Cir. 2022); *United States v. States*, 72 F.4th 778, 791 (7th Cir. 2023); *United States v. Pastore*, 83 F.4th 113, 120 (2d Cir. 2023). So, because murder under Virginia law necessarily requires the use of force, attempted murder under Virginia

9

law necessarily requires the attempted use of force.  Hence, VICAR attempted murder premised on attempted murder under Virginia law is a crime of violence under § 924(c)(3)(A).

Lassiter does not dispute that this was our reasoning in *Taylor*.  Instead, he argues that the Supreme Court rejected our reasoning when it affirmed *Taylor* on appeal.  *Taylor* involved whether attempted Hobbs Act robbery is a crime of violence under § 924(c)(3)(A).  596 U.S. at 848.  Hobbs Act robbery is the "unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual *or threatened force*."  § 1951(b)(1) (emphasis added); *Taylor*, 596 U.S. at 850.  Thus, to secure a conviction for Hobbs Act robbery, the government doesn't have to prove that the defendant used force; a showing that he merely threatened to use force suffices.  But this means that the government can secure a conviction for *attempted* Hobbs Act robbery without proving the use, attempted use, or threatened use of force—all it has to prove is that the defendant *attempted to threaten* to use force.  *See Taylor*, 596 U.S. at 851.  The Supreme Court therefore held that attempted Hobbs Act robbery is not a crime of violence under § 924(c)(3)(A).  *Id.* at 851–53; *see* § 924(c)(3)(A) (providing that a crime of violence "has as an element the use, attempted use, or threatened use of physical force," but not the attempt to threaten to use force).

*Taylor* offered a hypothetical to illustrate this point.  Suppose a person plans to rob a bank.  596 U.S. at 851–52.  But rather than bringing a gun, he plans to pass the teller a note demanding money and falsely implying that he is armed.  *Id*. at 852.  If the government apprehends him right as he enters the bank, it could convict him of attempted Hobbs Act

10

robbery, because he "attempted to threaten to use" force to rob the bank. *Id.* But his conduct would still fall outside of § 924(c)(3)(A): He "did not 'use' physical force," because he just walked into the bank; nor did he "'attempt' to use such force—his note was a bluff and never delivered"; "[a]nd he never even got to the point of threatening the use of force against anyone or anything." *Id.* Attempted Hobbs Act robbery, therefore, does not qualify as a crime of violence. *Id.*

Lassiter thinks that because *Taylor* held that attempted Hobbs Act robbery is not a crime of violence, attempted murder can't be one, either. But *Taylor*'s reasoning depended on the elements of the specific predicate offense at issue. *Taylor* established that when a completed crime can be committed by the threatened use of force, an attempt to commit that crime cannot qualify as a crime of violence. This logic, however, doesn't translate to attempted murder. "[U]nlike Hobbs Act robbery, a criminal cannot commit murder by threat." *Alvarado-Linares*, 44 F.4th at 1346. Rather, murder requires the actual use of force against another. *Mathis*, 932 F.3d at 265; *Manley*, 52 F.4th at 151. Thus every attempt to commit murder necessarily involves the attempted use of force against another. *Taylor*, 979 F.3d at 209. So attempted murder under Virginia law is a crime of violence under § 924(c)(3)(A), *Taylor* notwithstanding.

Possibly because he recognizes the sharp contrast between Hobbs Act robbery and murder, Lassiter tries to divorce *Taylor*'s reasoning from the crime it analyzed by suggesting *Taylor* held that nearly all attempt offenses are categorically not crimes of violence. He notes that an attempt offense generally requires proof of "(1) the intent to commit the substantive offense and (2) a substantial step toward committing that offense."

11

*States*, 72 F.4th at 785; *see also Simmons*, 11 F.4th at 271. But *Taylor*, on Lassiter's telling, concluded that neither element satisfies the force clause: "[A]n intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force." 596 U.S. at 851. Based on this quotation, Lassiter argues that an attempt crime cannot qualify as a crime of violence unless its substantial step involved the use, attempted use, or threatened use of force. And from this he concludes that attempted murder under Virginia law is not a crime of violence, since it can be committed with a non-forceful and non-violent overt act (in Lassiter's case, knocking at the target's door). *See Simmons*, 11 F.4th at 251.

Yet Lassiter's cherry-picked invocation of *Taylor* ignores the context of this quotation. We read the Supreme Court's opinions in their entirety. *See Smoot Sand & Gravel Corp. v. C.I.R.*, 241 F.2d 197, 206 (4th Cir. 1957). In full context, the quoted text concerned the offense at issue in that case, not all attempt offenses generally. As explained, the Court was analyzing the specific crime of attempted Hobbs Act robbery. That offense can be committed by a mere attempt to threaten to use force, which § 924(c)(3)(A) does not encompass. So the Court stated—for that particular crime—that its elements do not require proof that the defendant used, attempted to use, or even threatened to use force. *Taylor*, 596 U.S. at 852. But the Court did not thereby lay down a categorical rule that only attempt offenses with forceful substantial steps can qualify as crimes of violence.

Our reading of *Taylor* is confirmed by § 924(c)(3)(A)'s text. As Lassiter himself points out, the otherwise-undefined word "attempt[ ]" in § 924(c)(3)(A) presumably bears the same meaning that it does in any other federal criminal statute: intent to achieve the

12

ultimate objective coupled with a substantial step toward achieving that objective. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 106–07 (2007); *Taylor*, 596 U.S. at 851. But the statute does not leave us with only that generic definition of attempt. Rather, it tells us what the "ultimate objective" is: "the attempted use . . . of physical force." § 924(c)(3)(A). Thus the relevant question is not, as Lassiter suggests, whether the generic elements of "attempt" require the use, attempted use, or threatened use of force; rather it is whether a specific attempt offense requires proof of (1) the intent *to use force* and (2) a substantial step *toward using force*.

Nor does anything in § 924(c)(3)(A) suggest that the attempt itself—*i.e.*, either the intent or the substantial step—must entail force. In fact, everything suggests it need not. Congress did not define a "crime of violence" as one that involves "*forcible* attempted use of force." And reading a forcible-attempt requirement into § 924(c)(3)(A) "would effectively strike 'attempted . . . use of physical force' from" the statute. *States*, 72 F.4th at 786 (omission in original). That's because every "attempted use . . . of physical force" would necessarily require, and thus be subsumed by, "the use . . . of physical force." § 924(c)(3)(A). We decline to give the former a meaning that would, in effect, leave it with no meaning at all. *See* 2A Shambie Singer & Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 46.6 (7th ed. 2023) ("Courts construe a statute to give effect

to all its provisions, so that no part is inoperative or superfluous, void or insignificant . . . .").[3]

Rather than holding that an isolated line from *Taylor* renders § 924(c)(3)(A) partly superfluous, we read *Taylor* to hold what it held:  Attempted Hobbs Act robbery is not a crime of violence because the completed crime doesn't require the "use" of force.  *Taylor*, 596 U.S. at 851.  Said another way, *Taylor* simply rejected the proposition that an attempt to commit a crime of violence is automatically a crime of violence.  *Id.*; *see States*, 72 F.4th at 788.  In doing so, it made clear that if a completed crime of violence can be accomplished by mere threat to use force, then the attempted offense isn't a crime of violence.  *Taylor*, 596 U.S. at 851.

Yet *Taylor* left intact the opposite (and logical) proposition:  If a completed crime of violence requires the *use* of force, then an attempt to commit that offense is a crime of violence because it necessarily requires *the attempted use* of force.  *Taylor*, 979 F.3d at

---

[3] In an effort to persuade us that the words "attempted use . . . of physical force" do not refer to a null set of offenses under his reading of *Taylor*, Lassiter takes a cue from the defendant in *States*, 72 F.4th at 786–87, and points to the federal hate crimes statute.  *See* 18 U.S.C. § 249(a)(1) (prohibiting "attempt[ing] to cause bodily injury to any person" "through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device").  That statute's reference to fire and weaponry may *suggest* that the "substantial step" constituting a defendant's "attempt[ ] to cause bodily injury" was actually violent.  But it is unclear why the substantial step in that "attempt" could not be something that Lassiter insists is "nonviolent," like knocking on someone's door with gun in hand.  In other words, Lassiter has not explained why the substantial step involved in a § 249 conviction need be any more violent *per se* than that involved in an attempted-murder conviction like his own.  After all, at common law and under most state and federal criminal statutes penalizing attempts, the substantial step required to secure a conviction for an attempt to commit even the most violent offense need not itself involve any violence.  *See* 1 Jens D. Ohlin, *Wharton's Criminal Law* § 7.5 (16th ed. 2023) (collecting examples).

14

209. Such is the relationship between murder and attempted murder under Virginia law. So VICAR attempted murder, premised on attempted murder under Virginia law, is a crime of violence under § 924(c)(3)(A). And because *Taylor* didn't hold otherwise, Lassiter's challenge to his § 924(c)(1)(A) convictions both fails plain-error review and is barred by the mandate rule.[4]

### C. The inconsistency between the oral and written description of Lassiter's supervised release requires us to vacate his entire sentence and remand for a full resentencing.

"[W]e review the consistency of [Lassiter]'s oral sentence and the written judgment *de novo*." *Rogers*, 961 F.3d at 296; *see also United States v. Cisson*, 33 F.4th 185, 192–93 (4th Cir. 2022).

The parties agree that there's a discrepancy between the district court's oral pronouncement of Lassiter's sentence and its written memorialization. The former requires Lassiter, if he tests positive for illicit-substance use during supervised release, to enroll in a substance-abuse treatment program and pay for it "to the extent he's capable" of doing so. J.A. 161. The latter repeats this condition but omits the phrase "to the extent he's capable." J.A. 171. And the parties agree that this inconsistency amounts to a *Rogers* error. *See Rogers*, 961 F.3d at 296.

But the parties part ways over the proper remedy. Lassiter requests we vacate his entire sentence, citing *Rogers*, 961 F.3d 291, and *United States v. Singletary*, 984 F.3d 341

---

[4] In holding that *Taylor* doesn't undercut the conclusion that attempted murder is a crime of violence, we join all our sister circuits that have considered the issue. *See Alvarado-Linares*, 44 F.4th at 1346–47; *States*, 72 F.4th at 791; *Dorsey v. United States*, 76 F.4th 1277, 1284 (9th Cir. 2023); *Pastore*, 83 F.4th at 120–22.

15

(4th Cir. 2021). The government counters that the proper remedy is a limited remand "for the District Court to correct the written judgment so that it conforms with the sentencing court's oral pronouncements." *United States v. Morse*, 344 F.2d 27, 29 n.1 (4th Cir. 1965).

We agree with Lassiter. Our precedents are clear: When a *Rogers* error occurs, we must vacate the entire sentence and remand for full resentencing.[5] *See Rogers*, 961 F.3d at 300–01; *Singletary*, 984 F.3d at 346 n.4 ("*Rogers* drew no distinction between the defendant's supervised release sentence and his custodial sentence; instead, it simply vacated his entire sentence and remanded for resentencing."); *United States v. Kemp*, 88 F.4th 539, 547 (4th Cir. 2023). That we have previously emphasized the primacy of the oral over the written judgment doesn't matter; *Rogers* observed this fact, too, yet it still mandated a full resentencing. *See* 961 F.3d at 296. We must follow that same course here.[6]

\*       \*       \*

The attempt to murder another person in violation of Virginia law is the attempt to use force against another. Thus, a VICAR attempted murder conviction premised on such an offense is categorically a crime of violence. The Supreme Court's decision in *Taylor* did not undermine that conclusion. So Lassiter's challenges to his convictions under § 924(c)(1)(A) are barred. But because there is an inconsistency between the district

---

[5] Of course, we have before suggested that a more limited remedy may be appropriate when the *defendant* requests it. *See United States v. Singletary*, 75 F.4th 416, 427 n.7 (4th Cir. 2023). But such is not the case here.

[6] Lassiter also argued that a separate condition of his supervised release is vague and violates non-delegation principles. In light of the *Rogers* error and remand for resentencing, we need not address this argument before the district court has had an opportunity to do so.

court's oral pronouncement of one of Lassiter's supervised-release conditions and its written memorialization of that condition, we vacate his sentence in full and remand for resentencing.  The case is thus

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED.*

AGEE, Circuit Judge, concurring in part and concurring in the judgment:

I concur in the majority's opinion insofar as it affirms Lassiter's convictions under 18 U.S.C. § 924(c)(1)(A). I concur only in the judgment vacating and remanding for resentencing in light of the *Rogers* error that occurred with respect to one of the conditions of supervised release because I am bound by *stare decisis* regarding prior decisions of this Court holding that a defendant is entitled to plenary resentencing for this type of error. In doing so, however, I write separately to join my colleague Judge Quattlebaum in publicly voicing concern with what our decisions in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir. 2021), have wrought.

In his recent concurring opinion in *United States v. Kemp*, 88 F.4th 539, 547–53 (4th Cir. 2023), Judge Quattlebaum expressed three concerns with this line of cases. First, "the internal reasoning of *Rogers* and *Singletary* is inconsistent and conflicts with our precedent concerning errors in a written judgment." *Id.* at 547. Second, "while our stated remedy for *Rogers-Singletary* errors is a full resentencing, we do not consistently employ it." *Id.* And, third, "requiring a full resentencing is unnecessary to adequately remedy *Rogers-Singletary* errors and out of step with how other courts of appeals address these issues." *Id.* I agree in full and will not spill more ink belaboring those well-documented arguments. *Id.* at 547–53.

In this case, we find ourselves straying even further away from the original problem *Rogers* (and *Singletary*) sought to address. In *Rogers*, the Court encountered a situation in which the district court's oral sentence did not identify (at all) twenty-six conditions of supervised release listed in the written judgment. 961 F.3d at 294. To remedy that error, the

18

Court vacated the whole sentence and remanded for plenary resentencing. *Id.* at 300–01; *see Singletary*, 984 F.3d at 346 & n.4 (rejecting the argument that a *Rogers* error could be corrected by striking the condition that had not been orally pronounced and appeared for the first time in the written judgment or by remanding for resentencing as to the challenged condition alone by citing the unified sentence theory and observing that *Rogers* had remanded for plenary resentencing). Here, in contrast, we encounter a situation in which the district court's oral sentence identified and described the challenged condition of supervised release, but the oral pronouncement contained a proviso to that condition— "with partial costs to be paid by [the defendant], *to the extent he's capable*," J.A. 161 (emphasis added)—that the written judgment omits, *see* J.A. 171 (omitting the emphasized phrase). Surely, what occurred here reflects more of a discrepancy between the oral pronouncement and written judgment than the entirely new conditions imposed in *Rogers* and *Singletary*.

Under our pre-*Rogers* and *Singletary* cases, the inconsistency would require the written judgment to be "corrected to conform with [the] oral . . . pronouncements." *Rakes v. United States*, 309 F.2d 686, 688 (4th Cir. 1962); *see also United States v. Morse*, 344 F.2d 27, 30–31 (4th Cir. 1965) (remanding sentence "with directions to correct the written commitment in accordance with its oral expressions" because it would "involve no change, certainly no increase, in the sentence"). Indeed, a handful of post-*Rogers* unpublished cases have relied on these principles and not required plenary sentencing when the Court deemed the district court's intent "clear" despite a technical discrepancy between the wording of the oral pronouncement and the written judgment. *See, e.g.*, *United States v. Sims*, No. 22-

19

4509, 2023 WL 5224651, *2 & n.2 (4th Cir. Aug. 15, 2023) (per curiam) (remanding for correction of the written judgment to conform to the oral pronouncement where the district court orally ordered the defendant to support his "children," but the written judgment required him to support his "dependent(s)," and the record "reflect[ed] no dependents other than [the defendant's] children"); *United States v. Locklear*, No. 21-4161, 2023 WL 2300394, *1–2 (4th Cir. Mar. 1, 2023) (per curiam) (same conclusion for same discrepancy). Still more have resisted that approach, leading to the inconsistent application of the remedy for *Rogers* error that Judge Quattlebaum noted.

Forging a stronger nature-of-the-discrepancy inquiry to locate exceptions to the remedy set out in *Rogers* and *Singletary* would only exacerbate the problems Judge Quattlebaum referenced and thereby further cloud already muddied waters. Our *Rogers* and *Singletary* line of cases are becoming increasingly untenable, and members of both the government and defense bar have also begun to resist *Rogers*' remedy of plenary resentencing in every case, even as they continue to disagree as to what form of more limited relief may be appropriate in a given case.

We should correct course soon, both for the development of the law within our own circuit and to avoid drifting further astray from the approach taken in our sister courts of appeals. *See Kemp*, 88 F.4th at 551 (Quattlebaum, J., concurring) (describing why requiring plenary resentencing is "an outlier among other circuits"). But we cannot do so as a panel; it would require intervention of the Court sitting en banc or of the Supreme Court. Perhaps someone out there will take the hint.