PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2020
_____

UNITED STATES OF AMERICA

v.

DAMEIA O. SMITH, a/k/a Omar, a/k/a D,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2:99-cr-00445-001)
District Judge:  Honorable Gerald A. McHugh
_____

Argued October 1, 2025
Before:  CHAGARES, *Chief Judge*, BIBAS, and FISHER,
*Circuit Judges*.

(Filed:  February 3, 2026)

Jessica A. Ettinger   **ARGUED**
Lisa Evans Lewis, Chief Federal Defender
Federal Community Defender Office for the Eastern District
of Pennsylvania

601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
	*Counsel for Appellant*

Robert A. Zauzmer   **ARGUED**
Jacqueline C. Romero, United States Attorney
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
	*Counsel for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

This appeal requires us to decide whether, under the categorical approach, attempted murder of a federal witness is a "crime of violence" as defined in 18 U.S.C. § 924(c). We conclude that it is.

More than twenty years ago, a jury convicted Dameia Smith of both solicitation and attempted murder of a federal witness. The jury also convicted him of using or carrying a firearm "during and in relation to" a "crime of violence," 18 U.S.C. § 924(c)(1)(A), which triggered a significant sentence enhancement that culminated in forty years' imprisonment. Throughout the following two-plus decades, the Supreme Court narrowed the scope of predicate offenses that qualify as crimes of violence. Based on those intervening decisions, Smith argues that his § 924(c) conviction should be vacated either because attempted murder of a federal witness is not a

2

"crime of violence" or, alternatively, because the jury could have convicted based only on the invalid predicate of solicitation. The District Court denied relief.

If "the categorical approach ends up in the right place" only "[o]nce in a blue moon," then this is one of the "rare night[s] when the blue moon has risen." *United States v. Vines*, 134 F.4th 730, 732–33 (3d Cir. 2025). The categorical approach leads to the common-sense conclusion that attempted murder of a federal witness is a crime of violence because the government must necessarily prove that the defendant at least attempted to use physical force. Additionally, there is not a reasonable probability that Smith's § 924(c) conviction is based only on the invalid solicitation predicate. Therefore, we will affirm.

## I.

## A.

In September 1998, Smith, an IRS tax examining clerk, robbed a restaurant employee as she attempted to deposit the restaurant's money at a bank. Smith, who knew the victim through his girlfriend, threatened the victim with a handgun and demanded the money. He was charged with robbery two weeks later and, after learning the victim was cooperating with authorities, told acquaintances that "something might happen to her" if she identified him in court. App. 116.

In October 1998, Smith unlawfully accessed the IRS database to obtain the victim's home address and other personal information. In January 1999, Smith told a girlfriend that "he was going to kill" the victim before she could testify. App. 117. Accompanied by a different friend, Smith drove with a firearm to the victim's home. After explaining that the person who lived there was a witness against him in a robbery case, Smith handed the gun to the friend and repeatedly asked

3

him to enter the house and kill the victim. The friend refused, but Smith pressured him into committing another crime—bank robbery. They failed to complete the bank robbery, and Smith's friend soon began cooperating with the authorities, leading to Smith's arrest in February 1999.

B.

Smith went to trial on six counts: (1) Hobbs Act robbery, 18 U.S.C. § 1951(a); (2) using a firearm "during and in relation to" a "crime of violence," 18 U.S.C. § 924(c), predicated on Count One; (3) unauthorized access of a computer in furtherance of a criminal or tortious act, 18 U.S.C. § 1030; (4) solicitation to commit a "crime of violence," 18 U.S.C. § 373, predicated on murder of a federal witness; (5) attempted murder of a federal witness, 18 U.S.C. § 1512(a)(1)(C); and (6) using a firearm "during and in relation to" a "crime of violence," 18 U.S.C. § 924(c), predicated on Count Four or Count Five. A jury convicted Smith on Count Three, unauthorized access of a computer, but it was unable to reach a verdict on the other counts.

The Government retried Smith on the remaining five counts in May 2000, and the jury returned a conviction on each count. The jury used a general verdict form where it simply marked either "guilty" or "not guilty" next to a brief description of each count. App. 102. The form described the Count Six firearm charge as "[u]sing or carrying a firearm during and in relation to the crimes charged in Count Four [solicitation] or Count Five [attempted murder]." *Id.* The trial judge instructed the jury that it could return a § 924(c) guilty verdict predicated on either count. The jury did not specify whether it relied on solicitation or attempted murder as the predicate crime of violence for the Count Six § 924(c) conviction, and the Count Six conviction alone subjected

4

Smith to a mandatory consecutive sentence of twenty-five years in prison. In August 2000, the court imposed a total prison term of 481 months (more than forty years). After our Court affirmed, Smith moved for relief under 28 U.S.C. § 2255, which the District Court denied in December 2002.

This appeal concerns the validity of Smith's conviction under Count Six. At the time of the conviction, § 924(c) defined a "crime of violence" under two different provisions. First, under the "elements clause," a crime of violence "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Second, under the "residual clause," a crime of violence "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

In 2019, the Supreme Court held that the residual clause in § 924(c)(3)(B) is unconstitutionally vague. *United States v. Davis*, 588 U.S. 445, 448 (2019). In light of *Davis*, we granted Smith leave to file a second § 2255 motion and remanded the case for further proceedings. The District Court denied relief and declined to issue a certificate of appealability. It held that attempted murder of a federal witness is a crime of violence under the elements clause.

Soon thereafter, we stayed the deadline for Smith to move for a certificate of appealability pending the outcome of the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). After the Court held in *Taylor* that attempted Hobbs Act robbery does not qualify as a crime of violence as defined by the elements clause, 596 U.S. at 852, Smith moved for a certificate of appealability. In August 2022, we granted a certificate of appealability, vacated the District Court's earlier order, and remanded for further consideration in light of

5

*Taylor*.

In May 2024, the District Court again denied relief, holding that *Taylor* did not impact its previous holding that attempted murder of a federal witness is a crime of violence as defined by the elements clause. This appeal followed. We held it *c.a.v.* pending the Supreme Court's decision in *Delligatti v. United States*, 604 U.S. 423 (2025), and our decision in *United States v. Vines*, 134 F.4th 730 (3d Cir. 2025). It is now ripe for resolution.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 (offenses against the laws of the United States) and 28 U.S.C. § 2255 (collateral petition). We have jurisdiction under 28 U.S.C. § 2255(d) (final judgment on collateral petition).

Whether a conviction qualifies as a predicate offense is a question of law subject to *de novo* review. *See United States v. Peppers*, 899 F.3d 211, 219–20 (3d Cir. 2018). "In reviewing jury instructions, we consider the legal standard stated in the instructions *de novo*" and review "the specific wording of the instructions" for abuse of discretion. *United States v. Boone*, 458 F.3d 321, 326 (3d Cir. 2006).

## III.

### A.

Under the elements clause, a crime of violence is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). We must apply "the much-maligned categorical approach" to decide whether Smith's Count Five conviction of attempted murder of a federal witness, 18 U.S.C. § 1512(a)(1)(C), validly serves as a predicate crime of violence under the elements clause. *Vines*,

6

134 F.4th at 733. The categorical approach "precludes . . . an inquiry into how any particular defendant may commit the crime." *Taylor*, 596 U.S. at 850. Rather, the court should "identify 'the least culpable conduct hypothetically necessary to sustain a conviction under the statute' and presume the defendant engaged in that conduct when committing the prior offense." *United States v. Harris*, 68 F.4th 140, 145 (3d Cir. 2023) (quoting *Hernandez-Cruz v. Att'y Gen.*, 764 F.3d 281, 285 (3d Cir. 2014)). "The only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Taylor*, 596 U.S. at 850. Therefore, we are required to consider only one question: whether a conviction for attempted murder of a federal witness requires, in every instance, proof of the "use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A).

1.

To obtain a conviction for attempted murder of a federal witness, the government must prove several elements, but only the first element is at issue here: that the defendant attempted to kill a person. 18 U.S.C. § 1512(a)(1); *see also United States v. Tyler*, 956 F.3d 116, 123 (3d Cir. 2020). The parties agree that an attempted killing is committed by someone who (1) has an intent to kill another and (2) takes a substantial step toward that end. Appellant's Br. 22; Appellee's Br. 20; *see also Braxton v. United States*, 500 U.S. 344, 349 (1991) (attempted killing is a "substantial step" together with "the requisite *mens rea*").

The parties first disagree about whether *Taylor* alone is dispositive. *Taylor* holds that attempted Hobbs Act robbery is not a crime of violence under § 924(c). 596 U.S. at 852. The

7

Court noted that a completed Hobbs Act robbery is an "unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force." *Id.* at 850 (quoting 18 U.S.C. § 1951(b)). For attempted Hobbs Act robbery, then, "the government must prove two things: (1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* at 851 (quoting *United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007)). The Court explained that proving the "substantial step" element of attempted Hobbs Act robbery "does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.*

The Court offered a helpful hypothetical: "Adam" tells a friend he is planning to rob a store. *Id.* at 851–52. Adam then takes "substantial step[s]" toward committing the robbery when he buys a ski mask, plans an escape route, and recruits a getaway driver. *Id.* at 852. "Finally, he drafts a note—'Your money or your life'—that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response." *Id.* Adam's friend tips off the police, who arrest him as he enters the store. *Id.* While this is no doubt enough to convict Adam of attempted Hobbs Act robbery, he did not commit a crime of violence because he "did not 'use' physical force. He did not 'attempt' to use such force—his note was a bluff and never delivered. And he never even got to the point of threatening the use of force against anyone or anything." *Id.*

Smith argues that *Taylor*'s holding extends to other attempt-based offenses that have a common law analogue and, therefore, that attempted murder of a federal witness is not a crime of violence. He says that attempt crimes, including

attempted murder, require only (1) intent and (2) a substantial step and that a substantial step need not categorically involve the use, attempted use, or threatened use of force. Conversely, the Government argues that *Taylor* is distinguishable. Because one can complete a Hobbs Act robbery by threatening to use force, the Government contends that one can complete attempted Hobbs Act robbery—at issue in *Taylor*—by "an attempt to threaten force," which is not included under the elements clause of § 924(c). Appellee's Br. 19. The Government notes that murder of a federal witness, unlike Hobbs Act robbery, cannot be completed by threatening the use of force, so attempted murder of a federal witness cannot be completed by an attempt to threaten force.

The parties disagree about the application of the following sentence from *Taylor*: "[W]hatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." 596 U.S. at 851. Smith argues that this sentence applies broadly and resolves this case because the Government can secure a conviction for attempted murder of a federal witness by proving that the defendant took non-violent substantial steps. But the Government says this sentence from *Taylor* is "cherry-picked" and lacks important context. Appellee's Br. 25–26 (quoting *United States v. Lassiter*, 96 F.4th 629, 638 (4th Cir. 2024)).

The Government is correct. First, the sentence is in a paragraph discussing the elements of attempted Hobbs Act robbery. *Taylor*, 596 U.S. at 851. And neither that paragraph nor any other part of the opinion discusses common law-derived attempt crimes in general. Second, like the hypothetical involving the bank robber Adam and his threatening note, the Court's subsequent analysis focused almost exclusively on the meaning of "threat" in the elements

9

clause. *Taylor*, 596 U.S. at 851–52, 854–57. That analysis is inapplicable in this case because the statute at issue here involves only "kill[ing] or attempt[ing] to kill another person," not threatening to kill another person. 18 U.S.C. § 1512(a)(1)(C). Third, the Supreme Court has declined to decide whether *Taylor* extends to attempted murder, let alone all common law-based attempt offenses. *See Delligatti*, 604 U.S. at 428 nn.1, 2 (2025).

For these reasons, we decline to read *Taylor* as holding that all common law-based attempt offenses are not crimes of violence. Rather, *Taylor*'s holding is limited to attempted Hobbs Act robbery and, at most, extends to other crimes where a conviction can be obtained by a showing of an attempt to threaten force. A conviction for attempted murder of a federal witness cannot be obtained by a showing of an attempt to threaten force. Therefore, we must independently apply the categorical approach to determine if it is a crime of violence.

2.

Under the categorical approach, we must consider whether a conviction for attempted murder of a federal witness requires in every instance proof of the "use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(c)(3)(A); *see also Taylor*, 596 U.S. at 850. The core dispute between the parties is what conduct constitutes "attempted use . . . of physical force" and whether a defendant can attempt to murder a federal witness without attempting to use force. 18 U.S.C. § 924(c)(3)(A). The parties provide different interpretations of what "attempt" means in the context of the elements clause.

Smith argues that attempted use of physical force includes only the "unsuccessful active employment of violent force," Appellant's Br. 30, while the use of physical force requires "the successful active employment of violent force,"

*id.* at 34. Although he doesn't provide any examples, Smith appears to suggest that an "unsuccessful active employment of violent force"—or attempted use of physical force—is something like firing a gun but missing the target or driving a car at someone but failing to make contact. *See* D. Ct. Dkt. 186 at 3 (arguing that one who sets out to run someone over with a car but gets waylaid before beginning to drive the car at the intended victim does not even "attempt" to use physical force). Because a conviction for attempted murder can be obtained through a showing of something less than the unsuccessful active employment of violent force—such as by showing that the defendant solicited someone else to do the killing—Smith concludes that attempted murder of a federal witness is not a crime of violence.

At points, Smith implies that use of physical force requires direct contact between the defendant and the victim. This is incorrect. As *Delligatti* makes clear, someone who uses force indirectly, or even by omission, has made use of physical force under § 924(c). 604 U.S. at 429–34. Regardless, Smith offers no cases suggesting that "attempt" in § 924(c) means an "unsuccessful" use of force. Citing dictionary definitions, he says that his definition of "attempt" derives from its "ordinary, plain meaning." Appellant's Br. 34. But courts have rejected this argument, and for good reason: it would reduce the "attempted use" portion of the elements clause to a near or total nullity, and it would eliminate from the crime-of-violence category most—or perhaps all—attempted violence crimes under the categorical approach. *See United States v. Hunt*, 99 F.4th 161, 177 (4th Cir. 2024).

According to Smith, a predicate offense can result in a § 924(c) conviction under the "attempted use" portion of the clause only if the prosecution must prove that a defendant (1) employed the use of force but (2) failed to commit the

11

completed offense with that use. However, criminal laws are rarely written so narrowly. Rather than expressly prohibit nearly completed offenses, they typically make it illegal to engage in a broader range of conduct while intending to complete an offense. In other words, Smith's definition reduces the "attempted use" portion of the elements clause to a near or total nullity. *Hunt*, 99 F.4th at 177. "We should not lightly conclude that Congress enacted a self-defeating statute." *Quarles v. United States*, 587 U.S. 645, 654 (2019).

Additionally, Smith's definition fails to capture nearly all attempt offenses. Our circuit "follow[s] the Model Penal Code's framework for attempt liability." *United States v. Daniels*, 915 F.3d 148, 161 (3d Cir. 2019). That framework "requires intent and a substantial step towards . . . the commission of the crime." *Id.* (quoting *United States v. Glass*, 904 F.3d 319, 323 n.3 (3d Cir. 2018)). "[A] substantial step is conduct that is strongly corroborative of the firmness of a defendant's criminal intent." *United States v. Cicco*, 10 F.3d 980, 985 (3d Cir. 1993). The Model Penal Code lists as possible substantial steps many probative, corroborative acts that do not involve the use of physical force (or the unsuccessful active employment of violent force, as Smith would describe it), such as "lying in wait," "reconnoitering," and "soliciting an innocent agent to engage in conduct constituting an element of the crime." Model Penal Code § 5.01(2)(a), (c), (g). "Thus, if the phrase 'attempted use of force' refers only to acts such as discharging a firearm" or driving a car at someone, then many attempt offenses would fall outside the crime-of-violence category, and that "cannot be what Congress intended." *Hunt*, 99 F.4th at 177.

The Government offers the more cogent interpretation of the "attempted use . . . of physical force" language. 18 U.S.C. § 924(c)(3)(A). According to the Government, the

12

phrase's meaning originates from the common law of attempt crimes, so an "attempt to use force [is] commonly understood as a substantial step toward using force." Appellee's Br. 20. It argues that killing someone can only be accomplished by using physical force; an intent to kill someone therefore requires an intent to use physical force; and any defendant convicted of attempted murder must have completed a substantial step toward murder and, therefore, toward using physical force. And because attempted murder of a federal witness always requires a showing of an intent to use physical force and a substantial step toward that end, the Government concludes that it is a crime of violence. We agree with much of the Government's analysis, as well as its overall conclusion, as we now explain.

"Congress 'is understood to legislate against a background of common-law . . . principles.'" *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991)). For example, the Supreme Court has held that the phrase "physical force" in the ACCA's nearly identical elements clause derives its meaning from "the common law of robbery." *Stokeling v. United States*, 586 U.S. 73, 79 (2019); 18 U.S.C. § 924(e)(2)(B)(i) (ACCA elements clause, providing that "the term 'violent felony' . . . has as an element the use, attempted use, or threatened use of physical force against the person of another"). This is because, by the time Congress wrote the ACCA, "the level of force or violence needed at common law was . . . well established." *Id.* (citation modified). Likewise, Congress defined crimes of violence in § 924(c) against a background of common-law principles. So, the "attempted use" terminology in the elements clause—part of a criminal statute—derives its meaning from the well-established common-law definition of criminal attempt. Therefore, the

13

"attempted use . . . of physical force" is (1) having an intent to use physical force and (2) taking a substantial step toward using physical force. 18 U.S.C. § 924(c)(3)(A); *see also Resendiz-Ponce*, 549 U.S. at 107 (noting that common-law attempt requires (1) the requisite *mens rea* and (2) a substantial step).

For attempted murder of a federal witness to qualify as a crime of violence, then, a conviction must require, in every instance, a showing that the defendant at least intended to use physical force and took a substantial step toward using physical force. "[T]he 'knowing or intentional causation of bodily injury,'" including death, "'necessarily involves the use of physical force' under § 924(c) . . . ." *Delligatti*, 604 U.S. at 433 (quoting *United States v. Castleman*, 572 U.S. 157, 169 (2014)). To prove attempted murder, the Government must prove an intent to kill, *see Braxton*, 500 U.S. at 349–50—which means it must prove an intent to use physical force, *Delligatti*, 604 U.S. at 433. And because it must also prove the defendant took a substantial step toward an intentional killing, it necessarily must prove the defendant took a substantial step toward using physical force. A substantial step toward using physical force, with the required state of mind, is inescapably an "attempted use . . . of physical force"—whether or not the substantial step itself is violent. 18 U.S.C. § 924(c)(3)(A).

Every circuit to consider whether attempted murder (as defined by various federal and state laws) is a crime of violence under the elements clause has answered in the affirmative. *See United States v. Pastore*, 83 F.4th 113, 121–22 (2d Cir. 2023) (New York attempted murder and federal violent-crimes-in-aid-of-racketeering attempted murder); *United States v. Lassiter*, 96 F.4th 629, 633 (4th Cir. 2024) (Virginia attempted murder); *United States v. States*, 72 F.4th 778, 790–91 (7th Cir. 2023) (attempted murder of a federal official); *Dorsey v.*

14

*United States*, 76 F.4th 1277, 1283 (9th Cir. 2023) (attempted murder of a federal witness); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1347 (11th Cir. 2022) (Georgia attempted murder and federal violent-crimes-in-aid-of-racketeering attempted murder). We join our sister courts in that conclusion: because the Government must always prove an intent to use physical force and a substantial step toward that end, attempted murder of a federal witness always includes an attempted use of force and therefore is a crime of violence under the elements clause.

3.

We held this case pending decisions in *Delligatti* and *Vines*, but neither of those decisions contradict our holding here that attempted murder of a federal witness is a crime of violence.

*Delligatti* foreclosed one of Smith's previous arguments—that attempted murder is not a crime of violence because it can be committed by omission. Smith argued that "an act of omission does not constitute an act of physical force," and because someone can be convicted of attempted murder for acts of omission, attempted murder cannot be a crime of violence under the categorical approach. Appellant's Br. 36 (quoting *United States v. Harris*, 68 F.4th 140, 146 (3d Cir. 2023)). But the Court held in *Delligatti* that the "'use' of 'physical force' in § 924(c) encompasses the knowing or intentional causation of bodily injury," which includes instances "when an offender causes bodily injury by omission rather than affirmative act." 604 U.S. at 429.

In *Vines*, we held that both attempted bank robbery, 18 U.S.C. § 2113(a), and attempted armed bank robbery, 18 U.S.C. § 2113(d), are crimes of violence under § 924(c). 134 F.4th at 733. At first blush this may seem contrary to *Taylor*'s

15

holding that attempted Hobbs Act robbery is not a crime of violence. However, there is a material distinction in the statutes at issue. *Id.* at 738. Attempted bank robbery under 18 U.S.C. § 2113(a) requires making the attempt "by force and violence, or by intimidation." Because the "by force and violence, or by intimidation" element means that a conviction for attempted bank robbery requires a showing of at least intimidation—that is, a threatened use of force—rather than merely an attempt to threaten, "one cannot be convicted" of attempted bank robbery "without committing a crime of violence." *Id.* at 739.

The Hobbs Act robbery statute in *Taylor*, on the other hand, does not include a similar statutory requirement for the attempt-based offense. 18 U.S.C. § 1951(a).[1] So, the Court "applied the Model Penal Code and common law definitions of attempt." *Vines*, 134 F.4th at 738. And because completed Hobbs Act robbery requires only a showing of a threat, an attempted Hobbs Act robbery can be completed by a mere attempt to threaten. *See id.* ("[T]here is no force or violence element in attempted Hobbs Act robbery: It just requires showing that '[t]he defendant intended to unlawfully take personal property by means of actual or threatened force' and

---

[1] Someone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do" violates the Hobbs Act. 18 U.S.C. § 1951(a). "The verb 'attempt' is unmodified," and there is "no statutory language requiring the attempt to be made by force." *Vines*, 134 F.4th at 738. But the bank robbery statute at issue in *Vines* "is more specific: The adverbial phrase requiring force, violence, or intimidation limits the verb 'attempt.'" *Id.*; 18 U.S.C. § 2113(a).

completed a substantial step toward doing so." (quoting *Taylor*, 596 U.S. at 851)).

Here, the predicate offense is attempted murder of a federal witness, 18 U.S.C. § 1512(a)(1)(C), which, like attempted Hobbs Act robbery in *Taylor* but unlike attempted bank robbery in *Vines*, does not have an additional statutory requirement for the attempt-based offense. Smith asserts that, given the commonality with the Hobbs Act robbery statute in *Taylor*, common law-based attempted murder of a federal witness similarly cannot be a crime of violence. He points to a sentence in *Vines* to support his argument: "With no statutory language requiring the attempt to be made by force, *Taylor* applied the Model Penal Code and common law definitions of attempt, which do not require force." 134 F.4th at 738.

Indeed, the Model Penal Code and common law definitions of general attempt liability do not require force. *See* Model Penal Code § 5.01. But attempted murder does require at least the attempted use of force because, as we have explained, one can intentionally kill someone only by force. *See Delligatti*, 604 U.S. at 433. The sentence Smith plucks from *Vines* might be favorable in isolation, but read in context with the following sentence, it merely helps distinguish attempted Hobbs Act robbery from attempted bank robbery:

> With no statutory language requiring the attempt to be made by force, *Taylor* applied the Model Penal Code and common law definitions of attempt, which do not require force. Thus, there is no force or violence element in attempted Hobbs Act robbery: It just requires showing that "[t]he defendant intended to unlawfully take personal property by means of actual or

17

> threatened force" and completed a substantial
> step toward doing so.

*Vines*, 134 F.4th at 738 (quoting *Taylor*, 596 U.S. at 851) (internal citations omitted).

Taken together, the sentences explain why attempted Hobbs Act robbery is not a crime of violence—because attempt liability generally does not require force, and a conviction for attempted Hobbs Act robbery can be obtained by showing an attempt to threaten force. *Vines* does not consider attempt crimes, such as attempted murder of a federal witness, where the underlying completed crime necessarily requires the use of force (not just a threatened use of force). And, as we have explained, attempted murder of a federal witness—unlike attempted Hobbs Act robbery—necessarily requires at least the "attempted use . . . of physical force." 18 U.S.C. § 924(c)(3)(A). Therefore, it is a crime of violence under § 924(c).

## B.

Smith argues that even if attempted murder of a federal witness is a crime of violence, there is a reasonable probability that his Count Six § 924(c) conviction is based on the solicitation conviction, an invalid predicate. He points specifically to the instruction that the jury could return a § 924(c) guilty verdict predicated either on solicitation or attempted murder of a federal witness and asserts that this instruction was erroneous. The Government does not argue that solicitation is a qualifying crime of violence, and for good reason: the solicitation statute criminalizes commanding, inducing, or persuading someone else to commit a crime of violence. 18 U.S.C. § 373(a). A command, inducement, or persuasion is not itself a use, attempted use, or threatened use of physical force. Nevertheless, the Government argues that

18

there is no reasonable probability that Smith's Count Six § 924(c) conviction is based only on the solicitation conviction. And it additionally suggests that Smith has forfeited this argument by not presenting it in the District Court, meaning "review is therefore for plain error." Appellee's Br. 33. We need not decide whether Smith forfeited his argument because the result is the same whether or not the plain-error standard applies.

Federal habeas relief is warranted where a district court gives an erroneous jury instruction that "had substantial and injurious effect or influence in determining the jury's verdict." *Hassine v. Zimmerman*, 160 F.3d 941, 950 (3d Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). "A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam).

In the context of a § 924(c) conviction, an instruction that the jury could rely on a combination of valid and invalid predicate offenses to convict is erroneous. *See United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020). But if the same jury convicts the defendant for both the valid and invalid predicate offenses, the error is harmless if it is not reasonably possible that the § 924(c) conviction was based only on the invalid predicate. *Id.* (citing *United States v. Waller*, 654 F.3d 430, 434 (3d Cir. 2011)). In *Wilson*, for example, the jury convicted the defendant of both armed bank robbery (a valid predicate) and conspiracy (an invalid predicate). *Id.* There was "no 'reasonable possibility' that the jury based its § 924(c) convictions only on the conspiracy as opposed to the bank-robbery counts." *Id.* (quoting *United States v. Duka*, 671 F.3d 329, 356 (3d Cir. 2011)). Therefore, "any error was harmless." *Id.*; *see also United States v. Cannon*, 987 F.3d 924, 948 (11th

19

Cir. 2021) (error is harmless if "the trial record makes clear that the [valid and invalid predicates] were so inextricably intertwined that no rational juror could have found that [defendants] carried a firearm in relation to one predicate but not the other").

Here, the jury was instructed that it could return a § 924(c) guilty verdict predicated either on solicitation or attempted murder of a federal witness. As in *Wilson*, the jury convicted Smith of both predicate offenses. Unlike in *Wilson*, the predicates here are two distinct substantive crimes rather than a valid substantive predicate and its related conspiracy. Even so, the evidence here of one predicate offense (solicitation) supported the other (attempted murder), and they were "inextricably intertwined." *Cannon*, 987 F.3d at 948. Consider the Government's closing argument to the jury, which Smith cites in his reply brief:

> Ladies and gentlemen, going to that block [where the victim lived], having gotten that address through his computer, having already stated his clear intent to kill that woman, bringing a man there and giving him a gun to kill, that, ladies and gentlemen, is a substantial step toward the murder . . . . That, ladies and gentlemen, was the commanding, the procuring, the inducing of the murder . . . . He didn't say go scare her. He didn't say just sit in the car. He said, kill her and then provided him with the deadly means in which to do it.

Reply Br. 16 (quoting D. Ct. Dkt. 120 at 164).

Under the Government's theory, solicitation proved the substantial step element in the attempted murder charge. "Both federal law and the Model Penal Code recognize that

20

'solicitation accompanied by the requisite intent may constitute an attempt.'" *Martinez v. Att'y Gen.*, 906 F.3d 281, 286 (3d Cir. 2018) (quoting *United States v. Am. Airlines, Inc.*, 743 F.2d 1114, 1121 (5th Cir. 1984)); *see also* Model Penal Code § 5.01(2)(g) (listing, as an example of a substantial step for purposes of attempt, "soliciting an innocent agent to engage in" the crime). The jury convicted Smith of both predicates, and the two predicates are inextricably intertwined because evidence of one supported the other. Therefore, there is no reasonable possibility that the jury based its § 924(c) conviction only on the solicitation predicate, and any error in the jury instruction was harmless. And because the error was harmless, it cannot be said that the trial court's instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

A petitioner forfeits an argument that he fails to raise in the district court. *United States v. Bentley*, 49 F.4th 275, 284 n.6 (3d Cir. 2022). Ordinarily, we review forfeited arguments in criminal cases for plain error.[2] *United States v. Adams*, 252 F.3d 276, 284 (3d Cir. 2001); *see also* Fed. R. Crim. P. 52(b).

---

[2] The Government argues that the plain-error standard should apply. In fact, if Smith forfeited his jury instruction argument on collateral review, the proper standard might be the even more stringent "cause and actual prejudice" standard articulated in *United States v. Frady*, 456 U.S. 152, 167 (1982). *See United States v. Pelullo*, 399 F.3d 197, 220–21 (3d Cir. 2005). But neither party mentions the "cause and actual prejudice" standard, and in any event, if Smith cannot overcome the plain-error standard, he cannot overcome the "significantly higher hurdle" of the "cause and actual prejudice" standard. *Frady*, 456 U.S. at 166.

If Smith cannot overcome the *Brecht* standard because the error was harmless, then he necessarily cannot overcome the plain-error standard. A harmless error "does not affect substantial rights." Fed. R. Crim. P. 52(a). But a plain error by definition "affects substantial rights." Fed. R. Crim. P. 52(b). Under plain-error review, we can "correct the error" only if a district court "committed (1) 'error' (2) that is 'plain' (3) that 'affect[s] substantial rights.'" *Adams*, 252 F.3d at 285 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). If such an error exists, we still will not exercise our discretion to correct it "unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 732 (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

To show that a plain error affects his substantial rights, Smith would have to "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)). Because the erroneous instruction was harmless and did not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 623 (quoting *Kotteakos*, 328 U.S. at 776), Smith cannot show "the outcome of the proceeding would have been different" without the error, *Molina-Martinez*, 578 U.S. at 194.

IV.

Attempted murder of a federal witness is a crime of violence because the government must necessarily prove that the defendant at least attempted to use physical force. Additionally, there is not a reasonable probability that Smith's § 924(c) conviction is based only on the impermissible solicitation predicate, so any error in the jury instruction was harmless. Therefore, we will affirm the District Court's denial

of relief.